[No. 65566-3-I.   Division One.   December 12, 2011.]

THE CITY OF SEATTLE, *Respondent*, v. AKBAR MEAH, *Petitioner*.

454

Kristen V. Murray (of *The Defender Association*) and *Christine A. Jackson* (of *The Public Defender*), for petitioner.

*Peter S. Holmes, City Attorney,* and *Andrea T. Chin, Assistant,* for respondent.

¶1 DWYER, C.J. — In order to properly convict a person of stalking, a jury must find two or more "distinct, individual, noncontinuous occurrences or incidents" of following or harassment. *State v. Kintz,* 169 Wn.2d 537, 551, 238 P.3d 470 (2010). A municipal court jury found Akbar Meah guilty of stalking, in violation of former Seattle Municipal Code (SMC) 12A.06.035 (2008). On direct appeal, the superior court affirmed the conviction. We granted discretionary review to determine whether the evidence presented satisfied the requirements set forth in *Kintz.* Because we determine that insufficient evidence was adduced from which a

reasonable jury could determine that Meah repeatedly followed or harassed the alleged victim, we order his conviction vacated and remand the cause to the trial court for dismissal with prejudice.

I

¶2 The evidence presented at trial establishes that Meah was riding a bus on Aurora Avenue in Seattle on March 6, 2009. At approximately 11:30 p.m., 87-year-old Vera Galbreath boarded the bus and sat directly behind the driver, placing her shopping cart on the seat beside her. Meah, who was seated across the aisle, asked Galbreath if he could sit by her, to which she shook her head no. He continued to talk to her, despite Galbreath's efforts to ignore him by closing her eyes. Eventually, Meah slapped her knee in an attempt to gain her attention. Worried by Meah's persistence and nervous that he might follow her off of the bus at her normal stop, Galbreath contemplated leaving the bus at a different stop where more people would be present.

¶3 Instead, Galbreath exited the bus at her usual stop on Aurora Avenue at North 80th Street. Meah followed her off of the bus, continuing his efforts to talk to her. Meah followed Galbreath for two blocks, ignoring her attempts to wave him away. Meah repeatedly told Galbreath, "I want to know you," to which she replied, "Well, I don't want to know you." Clerk's Papers (CP) at 193.

¶4 Eventually, a passer-by, Collin Ballard, observed the encounter. Worried about Galbreath's safety, Ballard drove two blocks ahead, stopped his car, and waited for Galbreath and Meah to approach. Galbreath's facial expressions and body language conveyed her fear and distress. After briefly speaking with Galbreath, Ballard called 911. An officer was dispatched and arrived at the scene three minutes later.

¶5 Meah was convicted by a Seattle Municipal Court jury of one count of stalking. On RALJ appeal, the King

County Superior Court affirmed the conviction, determining that there was sufficient evidence that Meah repeatedly harassed and repeatedly followed Galbreath. A panel of this court entered an order granting discretionary review.

## II

¶6 Meah contends that his conviction for stalking must be overturned because there is insufficient evidence that he "repeatedly" followed or harassed Galbreath. We agree.

¶7 Evidence is sufficient to support a conviction where, " 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980) (emphasis omitted) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). "When the sufficiency of the evidence is challenged in a criminal case, all reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Circumstantial evidence and direct evidence are equally reliable in determining the sufficiency of the evidence. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980).

¶8 Pursuant to the applicable ordinance, a person commits stalking when he "intentionally and repeatedly harasses or follows another person." Former SMC 12A.06-.035(A)(1).[1] The ordinance defines "repeatedly" as "on two (2) or more separate occasions." Former SMC 12A.06-.035(E)(3). Although "separate occasions" is not defined in the SMC, our Supreme Court recently analyzed the mean-

---

[1] SMC 12A.06.035 was amended in 2010 and 2011. We analyze the version that was in effect at the time of Meah's conduct.

ing of this term in our state's analogous (and virtually identical) stalking statute.[2]

¶9 In *Kintz*, 169 Wn.2d 537, the defendant was charged with two counts of stalking, in violation of RCW 9A.46.110. The evidence established that Kintz's first victim, Theresa Westfall, saw him at least five times while walking with her children near a city park. On each occasion, Kintz drove a white van slowly past Westfall before breaking contact by driving out of sight. 169 Wn.2d at 541. Similarly, on a different day, victim Jennifer Gudaz saw Kintz at least four times over the course of about an hour. Kintz twice stopped his van to ask Gudaz for directions, stopped a third time to ask if she needed money or a ride, and drove by her a final time as she made her way home. Again, each episode was separated by a brief break in visual contact and physical proximity resulting from Kintz driving away. 169 Wn.2d at 542-43.

¶10 After the jury found Kintz guilty of both counts, he appealed, contending that the evidence was insufficient to sustain the convictions. He asserted that as to each count, his conduct constituted " 'only one ongoing following briefly interrupted by a short break in visual proximity.' " 169 Wn.2d at 552. Because the statute defines "repeatedly" as "on two or more separate occasions," Kintz contended that no reasonable fact finder could have found that he stalked Westfall or Gudaz. 169 Wn.2d at 552.

¶11 Our Supreme Court disagreed. Concluding that the term "separate occasions" was unambiguous, the court determined that the only reasonable interpretation of "separate occasions" was "distinct, individual, noncontinuous occurrences or incidents." 169 Wn.2d at 551. The court rejected Kintz's argument that a "substantial period of

---

[2] Both the stalking statute, RCW 9A.46.110, and the Seattle ordinance require that a person intentionally and "repeatedly" harass or follow another person in order to commit stalking. Both the statute and the ordinance define "repeatedly" as "on two or more separate occasions." RCW 9A.46.110(6)(e); former SMC 12A.06.035(E)(3).

time" must pass between occurrences. 169 Wn.2d at 550. Instead, the court held that proof of stalking requires two separate acts of harassment or following, "and no minimum amount of time must elapse between the occurrences, provided they are somehow separable." 169 Wn.2d at 551. Because both the Westfall and Gudaz incidents consisted of multiple "distinct episodes," separated by breaks in contact, the court determined that the evidence was sufficient for a jury to find that Kintz had "repeatedly" followed and harassed each woman. 169 Wn.2d at 555-57.

¶12 Meah contends that the evidence in his case is insufficient to meet the requirements of *Kintz*. This is so, he claims, because the evidence does not allow for a finding that he engaged in two or more distinct, individual, non-continuous occurrences of following or harassment. We agree.

¶13 Although the city does not dispute that Meah never left Galbreath's presence throughout the encounter, it asserts that no break in physical proximity or visual contact is required by *Kintz*. Instead, because *Kintz* specifies that "no minimum amount of time must elapse between the occurrences, provided they are somehow separable," 169 Wn.2d at 551, the city contends that "each time Defendant was rebuffed by Galbreath—on the bus, and four to five times on the street—can be delineated as a separate occurrence." Br. of Resp't at 7. However, such a reading of the stalking ordinance is supported by neither the language of that ordinance nor our Supreme Court's analysis of identical statutory language in *Kintz*.

¶14 Both the state stalking statute and the Seattle ordinance define "follows," in pertinent part, as "deliberately maintaining visual or physical proximity to a specific person over a period of time." RCW 9A.46.110(6)(b); former SMC 12A.06.035(E)(1). Because an episode of following necessarily continues so long as a person deliberately maintains visual or physical proximity with another, no new episode of following can begin until there is a break in

such proximity. Thus, in *Kintz*, the scope of each episode was "bounded by a break in contact" between Kintz and the victim. 169 Wn.2d at 557. Only when Kintz broke off physical proximity and visual contact by driving away did each episode of following terminate. In the Gudaz incident, the first episode ended "at the point Kintz drove away," the second, "when Kintz again drove away," the third, "when Kintz finally drove away," 169 Wn.2d at 556-57, and the fourth when "the van drove by."[3] 169 Wn.2d at 543. In the Westfall incident, the first episode ended "when Westfall walked down the trail," the second, "when Kintz drove out of Westfall's view," and the third, when "Kintz again drove away." 169 Wn.2d at 555. Consequently, under *Kintz*, some break in visual contact and physical proximity is required to find two or more distinct, individual, noncontinuous instances of following.

¶15 Here, the evidence established that Meah deliberately maintained both physical proximity and visual contact with Galbreath throughout their encounter. The episode of following began when Meah attempted to talk to Galbreath on the bus, continued when he trailed her off of the bus and up the street, and ended only when Collin Ballard intervened. Because no reasonable jury could find that Meah's conduct constituted more than a single, continuous episode of following, the evidence introduced at

---

[3] Our Supreme Court shed additional light on its views of what is required to terminate an episode of following in addressing the dissent's argument that the majority opinion had "imprudent policy ramifications." *Kintz*, 169 Wn.2d at 570 (Sanders, J., dissenting). The dissent argued that it made no sense to criminalize situations in which breaks in visual or physical proximity resulted in less contact between a stalker and his victims than there would have been had the stalker "hovered closely around them without any lapse in time or distance." 169 Wn.2d at 570 (Sanders, J., dissenting). The majority agreed with the dissent that in the latter case, "there would be only one occasion of following," and that such a defendant " 'would not be guilty of stalking.' " 169 Wn.2d at 559 (quoting dissent at 570). However, the court explained that the dissent had wrongly assumed "that uninterrupted following is more criminal than following that is broken off and later resumed." 169 Wn.2d at 559. Importantly, the court reasoned that an interruption in visual contact or physical proximity was necessary to find two or more separate occasions of following. Also of importance, of course, is that the hypothetical situation discussed therein closely resembles the facts of the instant case.

Meah's trial was insufficient to support Meah's stalking conviction based on two or more separate occasions of following.

¶16 Similarly, the evidence is insufficient to demonstrate that Meah harassed Galbreath on two or more separate occasions.[4] Initially, we note that the city's contention that a separate incident of harassment is initiated each time a defendant is rebuffed is inconsistent with our Supreme Court's decision in *Kintz*. Although the court explained that "no minimum amount of time must elapse between the occurrences, provided they are somehow separable," 169 Wn.2d at 551, the court's analysis focused entirely on breaks in physical and visual contact between Kintz and his victims. 169 Wn.2d at 555-57. Importantly, the court did not hold that separate occasions of harassment occurred where one of the victims repeatedly expressed her lack of interest in speaking to Kintz, 169 Wn.2d at 557, including by attempting to run away from his van. 169 Wn.2d at 542. Instead, the court held that the episode ended only when Kintz broke physical proximity and visual contact by driving away. 169 Wn.2d at 557. Accordingly, merely rebuffing a person does not transform a single encounter into two distinct, individual, noncontinuous incidents of harassment.

¶17 The city's alternative argument—that the encounter is separable by acts that occurred on the bus and those that occurred on the street—is also without merit. Although the move from the bus to the street could potentially support a finding of "distinct" occurrences, our Supreme Court has required that the behavior constituting separate occasions of harassment also be "noncontinuous." *Kintz*, 169 Wn.2d at 551. Here, the evidence establishes that Meah's behavior

---

[4] " 'Harasses' means to engage in an act directed at a specific person which seriously alarms, annoys, harasses, or is detrimental to such person, and which serves no legitimate or lawful purpose. This act shall be such as would cause a reasonable person to suffer substantial emotional distress, and shall actually cause substantial emotional distress to the person." Former SMC 12A.06.035(E)(2).

toward Galbreath constituted a single, uninterrupted course of conduct. His attempts to talk to Galbreath continued from the beginning until the end of the incident. He maintained physical proximity and visual contact throughout the encounter. There was no moment in which Galbreath felt free from Meah; nor did Meah ever turn his attention elsewhere before reinitiating contact. Indeed, Galbreath testified that she "finally got rid of [Meah]" only when Ballard intervened. CP at 194. Because the change in venue from the bus to the street did not create any break in Meah's continuous pattern of conduct, the evidence was insufficient to support a determination that Meah harassed Galbreath on two or more separate occasions.

¶18 In reaching our conclusion, we do not mean to minimize the inappropriate and disconcerting nature of Meah's actions. Even within the context of an urban environment, Meah's behavior toward Galbreath was both abnormal and threatening. Nevertheless, although Galbreath's distress during this encounter was palpable, it is for the legislature to determine what conduct sinks to the level of criminality. Here, as our Supreme Court has explained, "it is *repetition* . . . that the legislature has made the sine qua non of stalking." *Kintz*, 169 Wn.2d at 559-60.

¶19 Because there was insufficient evidence adduced to prove that Meah harassed or followed Galbreath on two or more separate occasions, the jury's verdict is not sustainable. Thus, we reverse Meah's conviction and remand the cause to the trial court for dismissal with prejudice.

¶20 Reversed and remanded.

APPELWICK, J., concurs.

¶21 GROSSE, J. (dissenting) — I dissent. This case is more like *Kintz*[5] than not. I believe the trial court should be

---

[5] *State v. Kintz*, 169 Wn.2d 537, 238 P.3d 470 (2010).

affirmed on either of the bases argued by the city. To hold otherwise, in my opinion, is to overemphasize the use of the descriptive or comparative term "noncontinuous."

¶22 First, when is it viewed as determinative, as it is in the majority opinion, it begs the question. Something that is "noncontinuous" is by definition distinct but the opposite is not necessarily so. But, while useful, such comparative juxtapositions alone cannot be determinative. While without question the statute[6] requires more than one act or occurrence, I believe the fact that one act is closely followed by another act does not itself make the two one.

¶23 Second, I believe the separation the statute requires should be defined by the act or acts themselves. As the facts of this case illustrate the encounter here was continuous in time, but divisible by separate acts; including, but not limited to, the slap on the knee, the negative response to the request to know the victim better, and following the victim when she left the bus. On these facts, I believe that it is consistent with *Kintz* to have left this decision with the trier of fact.

---

[6] RCW 9A.46.110.