277 P.3d 74 (2012)
STATE of Washington, Respondent,
v.
Sindy J. TRUONG, Appellant.
No. 67151-1-I.
Court of Appeals of Washington, Division 1.
May 29, 2012.
*75 Erin Lindsay Calkins, Nancy P. Collins, Washington Appellate Project, Seattle, WA, for Appellant.
Bridgette Eileen Maryman, King County Prosecutor's Office, Seattle, WA, for Respondent.
LAU, J.
¶ 1 Under our transactional analysis jurisprudence, an accused's use of force after the original taking to retain the personal property satisfies the force element of robbery. Because Sindy Truong used force to overcome resistance to the taking and unchallenged findings support the conclusions of law, we affirm her juvenile convictions of first and second degree robbery involving two different victims.

FACTS
¶ 2 The unchallenged findings of fact show the following: On the evening of November 19, 2010, Jason Decoste and Jessica Redmon-Beckstead were riding a bus home from a doctor appointment. The couple sat in the back of the bus, listening to Redmon-Beckstead's Zune MP3 player (audio file format) with a shared set of headphones. Decoste held the Zune in his hand.
¶ 3 A group of female juvenilesincluding Sindy Truong, Sha'raun Hill, Decontee Wea, Nyajouk Reath, and an unidentified adult femaleboarded the bus in downtown Seattle.[1] Redmon-Beckstead did not know anyone in the group. Decoste remembered Hill from a party he attended a year earlier. Hill walked past Redmon-Beckstead and sat down. She then repeatedly accused Decoste of taking her phone. As Hill continued to shout at Decoste about the phone, Truong *76 walked toward Hill, past Redmon-Beckstead and Decoste, and grabbed the Zune from his lap, detaching it from the headphones.[2] Truong quickly passed the Zune to Wea.
¶ 4 Redmon-Beckstead immediately stood, confronted the girls, and demanded the Zune back. They refused to return it. Wea then sat in Redmon-Beckstead's seat next to Decoste and Hill sat on Decoste's lap. Seeing Wea try to take her headphones from Decoste, Redmon-Beckstead moved to face Wea, Hill, and Decoste. Redmon-Beckstead took the headphones from Decoste and struggled with Wea over them. Wea pulled the headphones away and threw a punch at Redmon-Beckstead. Truong immediately joined in punching Redmon-Beckstead. When Decoste stood up to protect Redmon-Beckstead, Hill and Wea punched him. Hill twice punched the back of Decoste's head with a closed fist.
¶ 5 Hill then moved to stand in front of Decoste. She continued to demand a phone from him while Wea grabbed an overhead bar and kicked Decoste's head several times. Hill confronted Redmon-Beckstead and Decoste about the phone while Truong, Wea, and Reath searched Decoste's pockets.[3] Decoste pushed their hands away, but Wea removed a pack of cigarettes from his right pocket as Hill watched.
¶ 6 Hill continued to argue with Redmon-Beckstead and Decoste about the phone while Truong, Wea, and the unidentified adult female punched Redmon-Beckstead and Decoste.[4] Decoste and other passengers yelled for the driver to stop the bus. Hill told a passenger that it was not necessary to stop the bus. Truong and Wea searched Redmon-Beckstead's pockets while Wea again grabbed an overhead bar and kicked Redmon-Beckstead's head several times. Wea also kicked Decoste when he intervened.
¶ 7 The bus finally stopped and the rear door opened, allowing Redmon-Beckstead and Decoste to exit. The group of five shouted at the driver to start driving. When he declined, they exited and left the area. Redmon-Beckstead received six stitches above her eye at the hospital.
¶ 8 The State charged Truong with two counts of first degree robberyone for Redmon-Beckstead's Zune and headphones and one for Decoste's cigarettes. Based on an agreed motion from the State and Truong, the court waived application of exclusive adult jurisdiction and remanded the case to King County Juvenile Court. After a bench trial, the court found Truong guilty of first degree robbery of Redmon-Beckstead. The court acquitted Truong of first degree robbery of Decoste, but found her guilty of the lesser offense of second degree robbery. Truong appeals both counts, arguing insufficient evidence to support the convictions.

ANALYSIS

Standard of Review
¶ 9 Evidence is sufficient to support a conviction if, viewed in the light most favorable to the State, it permits a rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. State v. Montgomery, 163 Wash.2d 577, 586, 183 P.3d 267 (2008). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." State v. Salinas, 119 Wash.2d 192, 201, 829 P.2d 1068 (1992). We consider direct and circumstantial evidence equally reliable in weighing sufficiency of the evidence. City of Seattle v. Meah, 165 Wash.App. 453, 456, 267 P.3d 536 (2011). We defer to the trier of fact on issues of conflicting testimony, witness credibility, and the persuasiveness of the evidence. State v. Thomas, 150 Wash.2d 821, 874-75, 83 P.3d 970 (2004). Given the fact finder's opportunity to assess witness demeanor and credibility, we will not *77 disturb those findings. See State v. Pierce, 134 Wash.App. 763, 774, 142 P.3d 610 (2006).

Sufficiency of the Evidence
¶ 10 Because Truong assigns no error to the court's findings of fact except finding 11, they are verities on appeal. State v. O'Neill, 148 Wash.2d 564, 571, 62 P.3d 489 (2003). As to finding 11, substantial evidence supports this finding. Finding 11 states:
As [Decoste] and other passengers yelled for the bus driver to stop, Truong and Wea again began going through [Redmon-Beckstead's] pockets. Wea then again grabbed the overhead bar, and proceeded to kick [Redmon-Beckstead] several times in the head. When [Decoste] interposed himself between [Redmon-Beckstead] and Wea, he also got kicked.
Both the metro surveillance videotape and Redmon-Beckstead's testimony amply establish that Wea went through her pockets after the bus stopped. After several seconds, Truong also went through Redmon-Beckstead's pockets. The entire incident was recorded by a metro surveillance camera, and the videotapeincluding the audio portion was admitted at trial.[5] Thus, the main issue here is the effect of force used after a taking is legally complete under our transactional analysis jurisprudence.

First Degree Robbery
¶ 11 Truong argues that insufficient evidence supports her first degree robbery conviction because (1) no evidence supports the force element since she passed the Zune to Wea before using any force against Redmon-Beckstead and (2) no evidence shows that she took or touched the headphones. The State counters that under State v. Handburgh, 119 Wash.2d 284, 830 P.2d 641 (1992), sufficient evidence supports Truong's conviction as a principal or accomplice to first degree robbery.
¶ 12 A person is guilty of robbery when she unlawfully takes personal property from the person of another, or in his presence, against his will by the use, or threatened use, of force, violence, or fear of injury. RCW 9A.56.190. "Such force or fear must be used to obtain or retain possession of the property, or to prevent or overcome resistance to the taking." RCW 9A.56.190. "Any force or threat, no matter how slight, which induces an owner to part with his property, is sufficient to sustain a robbery conviction." Handburgh, 119 Wash.2d at 293, 830 P.2d 641; see also State v. Parra, 96 Wash.App. 95, 101-02, 977 P.2d 1272 (1999). If the person inflicts bodily injury in committing the crime, she is guilty of first degree robbery. RCW 9A.56.200(1)(a)(iii).
¶ 13 We have adopted a "transactional" analysis of robbery, whereby the force or threat of force need not precisely coincide with the taking. State v. Manchester, 57 Wash.App. 765, 770, 790 P.2d 217 (1990). The taking is ongoing until the assailant has effected an escape. Manchester, 57 Wash.App. at 770, 790 P.2d 217. The definition of robbery thus includes "violence during flight immediately following the taking." Manchester, 57 Wash.App. at 770, 790 P.2d 217; see also State v. Robinson, 73 Wash.App. 851, 856, 872 P.2d 43 (1994) ("Pursuant to [the transactional view of robbery], a robbery can be considered an ongoing offense so that, regardless of whether force was used to obtain property, force used to retain the stolen property or to effect an escape can satisfy the force element of robbery."). Citing Manchester, our Supreme Court endorsed the transactional analysis in Handburgh. The Handburgh court noted, "Implicit in the Manchester holding is the assumption a taking can be ongoing or continuing so that the later use of force to retain the property taken renders the actions a robbery." Handburgh, 119 Wash.2d at 290, 830 P.2d 641. The court concluded:
The plain language of the robbery statute says the force used may be either to obtain or retain possession of the property. We hold the force necessary to support a robbery conviction need not be used in the initial acquisition of the property. *78 Rather, the retention, via force against the property owner, of property initially taken peaceably or outside the presence of the property owner, is robbery.
Handburgh, 119 Wash.2d at 293, 830 P.2d 641.
¶ 14 Truong relies on State v. Johnson, 155 Wash.2d 609, 121 P.3d 91 (2005), to argue that "in order to retain property through force, an individual must have actual or constructive possession of the property. [Truong] gave up possession of the Zune within two seconds of taking it, and so could not have used force to have retained possession of the property." Appellant's Br. at 14 (citation omitted). In Johnson, the defendant walked into a store, loaded a television into a shopping cart, and pushed the cart out the front door. Johnson, 155 Wash.2d at 610, 121 P.3d 91. Two security guards followed him into the parking lot and confronted him. Johnson, 155 Wash.2d at 610, 121 P.3d 91. Johnson abandoned the shopping cart and turned to run away but suddenly turned back. Johnson, 155 Wash.2d at 610, 121 P.3d 91. One of the guards grabbed Johnson's arm, and Johnson punched the guard and ran away. Johnson, 155 Wash.2d at 610, 121 P.3d 91. The trial court convicted Johnson of first degree robbery and the Court of Appeals affirmed. Johnson, 155 Wash.2d at 610, 121 P.3d 91. In reversing Johnson's conviction, our Supreme Court cited Handburgh for the transactional view of robbery but distinguished the facts in Johnson's case from those in Handburgh:
The trial court's unchallenged findings of fact state that Johnson was trying to escape when he punched the security guard in the nose. And the trial court concluded that even though Johnson did not use force to obtain or retain the property, he was guilty of the crime because the transactional view of robbery includes force used during an escape. But as noted above, the force must relate to the taking or retention of the property, either as force used directly in the taking or retention or as force used to prevent or overcome resistance to the taking. Johnson was not attempting to retain the property when he punched the guard but was attempting to escape after abandoning it.

Johnson, 155 Wash.2d at 611, 121 P.3d 91 (emphasis added) (internal quotation marks omitted).
¶ 15 Truong's reliance on Johnson is misplaced. First, possession is not an essential element of robbery. As discussed above, the elements of robbery are (1) the unlawful taking (2) of personal property (3) from the person or presence of another (4) against his will and (5) by the use or threatened use of immediate force. RCW 9A.56.190; State v. Handburgh, 61 Wash.App. 763, 765, 812 P.2d 131 (1991) (rev'd on other grounds, 119 Wash.2d 284, 830 P.2d 641). We have held that "first degree robbery . . . does not have possession as an essential element." State v. Hayden, 28 Wash.App. 935, 939, 627 P.2d 973 (1981); but see State v. White, 40 Wash.App. 490, 495, 699 P.2d 239 (1985) (suggesting that whether first degree robbery includes possession "may be subject to some argument").
¶ 16 Second, in Johnson, the trial court applied transactional analysis to specifically find that the defendant used no force to obtain or retain the property. Johnson, 155 Wash.2d at 611, 121 P.3d 91. Instead, the defendant used force to escape after abandoning the property. In rejecting the trial court's unwarranted "attempt to broaden the transactional view of robbery beyond the statutory elements of the crime," the court reasoned:
This court in [Handburgh] rejected the common law view of robbery that the force used during a robbery must be contemporaneous with the taking and found the modern transactional view properly reflected Washington's robbery statute. In Handburgh, the defendant took a girl's bicycle while she was in a recreation center. When the girl saw the defendant riding her bicycle, she demanded he return it and a fistfight ensued. This court affirmed the defendant's robbery conviction, holding that the plain language of the robbery statute says the taking can take place outside the presence of the victim, and the necessary force to constitute robbery can be found in the forceful retention of stolen property that was peaceably taken. The *79 transactional view of robbery as defined in Washington's robbery statute requires that the force be used to either obtain or retain property or to overcome resistance to the taking.
The trial court's unchallenged findings of fact state that Johnson was trying to escape when he punched the security guard in the nose. And the trial court concluded that even though Johnson did not use force to obtain or retain the property, he was guilty of the crime because the transactional view of robbery includes force used during an escape. But as noted above, the force must relate to the taking or retention of the property, either as force used directly in the taking or retention or as force used to prevent or overcome resistance "to the taking." Johnson was not attempting to retain the property when he punched the guard but was attempting to escape after abandoning it.

Johnson, 155 Wash.2d at 611, 121 P.3d 91 (emphasis added).
¶ 17 In contrast, the trial court here properly concluded that Truong used force to retain Redmon-Beckstead's property. In addition to its unchallenged findings discussed above, the trial court's unchallenged oral finding[6] states that Truong physically attacked Redmon-Beckstead "almost immediately after [Redmon-Beckstead] announced that it was her Zune and tried to get it back." RP (Mar. 28, 2011) at 134. As the record amply shows and the trial court found, Redmon-Beckstead attempted to retrieve her Zune even after Truong used force against her. Unlike in Johnson, no evidence here shows the force was used to effect an escape. We conclude that viewed in the light most favorable to the State, sufficient evidence supports the court's proper conclusion that Truong took Redmon-Beckstead's Zune and used force to overcome Redmon-Beckstead's efforts to resist the taking.
¶ 18 While it is unnecessary to address Truong's challenge related to Redmon-Beckstead's headphones given our disposition above, we nonetheless conclude that the trial court properly found and concluded that Truong was an accomplice to first degree robbery when she assisted others in the robbery of Redmon-Beckstead's headphones.[7]
¶ 19 A robbery conviction may be based on accomplice liability. Under RCW 9A.08.020(3)(a)(i)-(ii), an accomplice is one who, "[w]ith knowledge that it will promote or facilitate the commission of the crime . . . encourages . . . or aids" another person in committing a crime. In other words, an accomplice associates himself with the venture and takes some action to help make it successful. In re Welfare of Wilson, 91 Wash.2d 487, 491, 588 P.2d 1161 (1979). The evidence must show that the accomplice aided in the planning or commission of the crime and that he had knowledge of the crime. State v. Trout, 125 Wash.App. 403, 410, 105 P.3d 69 (2005). Where criminal liability is predicated on accomplice liability, the State must prove only that the accomplice had general knowledge of his coparticipant's substantive crime, not that the accomplice had specific knowledge of the elements of the coparticipant's crime. State v. Rice, 102 Wash.2d 120, 125, 683 P.2d 199 (1984).
¶ 20 Mere presence of the defendant without aiding the principaldespite knowledge of the ongoing criminal activityis not sufficient to establish accomplice liability. State v. Parker, 60 Wash.App. 719, 724-25, 806 P.2d 1241 (1991). Rather, the State must prove that the defendant was ready to assist the principal in the crime and that he shared in the criminal intent of the principal, thus "demonstrating a community of unlawful purpose at the time the act was committed." State v. Castro, 32 Wash.App. 559, 564, 648 P.2d 485 (1982); see also State v. Collins, *80 76 Wash.App. 496, 501-02, 886 P.2d 243 (1995) ("Aid can be accomplished by being present and ready to assist."); State v. Rotunno, 95 Wash.2d 931, 933, 631 P.2d 951 (1981); Wilson, 91 Wash.2d at 491, 588 P.2d 1161.
¶ 21 Truong argues insufficient evidence to support her first degree robbery conviction involving the headphones. She mistakenly claims, "[T]here is no allegation or charge of accomplice liability. Likewise, the court did not conclude that [Truong] acted as an accomplice with respect to the Zune or the headphones. Thus, the question is whether the evidence was sufficient for [Truong] to be convicted as a principal. . . ." Appellant's Br. at 8-9 (citations omitted). She otherwise provides no accomplice liability argument. The amended information alleged that Truong, "together with others," robbed Redmon-Beckstead of her headphones. The court's unchallenged accomplice liability determination states, "It was a serious attack, and it was an attack in concert with Ms. Hill, Ms. We[a], Ms. Re[a]th, the adult whose name I don't believe was ever put in record, all of them acted together." RP (Mar. 28, 2011) at 134 (emphasis added).
¶ 22 Pointing to the metro surveillance videotape, Truong argues that "significant evidence shows that the headphones were never taken from Mr. Decoste in the first place." Appellant's Reply Br. at 16. Truong also cites Hill's testimony at trial, where Hill stated, "[B]y looking at the video, I see a pair of headphones in [Decoste's] hands, so I don't think they were taken." RP (Mar. 24, 2011) at 74. We decline to reweigh the evidence. The unchallenged findings are verities on appeal. The trial judge is entitled to believe one witness over another. Given the fact finder's opportunity to assess witness demeanor and credibility, we will not disturb those findings. See Pierce, 134 Wash.App. at 774, 142 P.3d 610. In addition to the court's accomplice liability finding discussed above, the court found that Truong "immediately started punching [Redmon-Beckstead]," after "Wea pulled the headphones away from [Redmon-Beckstead]." Truong does not dispute that Redmon-Beckstead suffered bodily injury resulting from the "series of assaults."

Second Degree Robbery
¶ 23 Truong contends that the evidence is insufficient to show she was an accomplice to second degree robbery of Decoste's cigarettes. The State responds that the evidence sufficiently indicates Truong knowingly aided Wea in the robbery.
¶ 24 All robberies not constituting first degree robbery are second degree robbery. RCW 9A.56.210. As discussed above, an accomplice is one who, "[w]ith knowledge that it will promote or facilitate the commission of the crime . . . encourages . . . or aids" another person in committing a crime. RCW 9A.08.020(3)(a)(i)-(ii). Mere presence with knowledge of the criminal activity does not support a finding of accomplice liability, but "[a]id can be accomplished by being present and ready to assist." Collins, 76 Wash.App. at 501-02, 886 P.2d 243 (emphasis added).
¶ 25 In addition to the unchallenged findings discussed above, the findings state that Truong, Wea, and Reath searched through Decoste's pockets, Wea removed the cigarettes, and Truong, Wea, and the unidentified adult female punched Decoste and Redmon-Beckstead.[8] We conclude that the unchallenged findings support Truong's second degree robbery conviction. And the findings support the court's conclusions of law. This challenge fails.

CONCLUSION
¶ 26 Because sufficient evidence supports Truong's first and second degree robbery convictions, we affirm.
WE CONCUR: APPELWICK and GROSSE, JJ.
NOTES
[1] Hill, Wea, and Reath were also charged for their participation. Truong and Hill were tried together. The fifth adult female remains unknown.
[2] Decoste testified, "I was holding the Zune, and then the Zune was out of my hand." RP (Mar. 11, 2011) at 68.
[3] The briefs use the phrase "pocket check" to indicate insertion of the hands into the victim's pockets to check for items. Resp't's Br. at 5.
[4] Decoste repeatedly told the group that Redmon-Beckstead was pregnant and one of them commented, "Nobody hit her in the stomach."
[5] The metro surveillance videotape indicates the incident lasted just under four minutes. See Ex. 3.
[6] Generally "[a] trial court's oral decision has no binding or final effect unless it is formally incorporated into findings of fact, conclusions of law and judgment." State v. Kilburn, 151 Wash.2d 36, 39 n. 1, 84 P.3d 1215 (2004). Here, the trial court expressly incorporated its oral findings and conclusions in its written findings and conclusions. Thus, the oral findings are binding.
[7] With the intent to commit theft, taking the personal property of another is an essential element of robbery. Here, the State is not required to show intent to take both the Zune and headphones. See State v. Tvedt, 153 Wash.2d 705, 107 P.3d 728 (2005).
[8] In its unchallenged oral ruling regarding robbery of Decoste's cigarettes, the court found that Truong "had been using force throughout this incident, both before and, in fact, somewhat afterwards." RP (Mar. 28, 2011) at 135.