## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  53912-8-II |
| Respondent, | |
| v. | |
| JAMES WILFORD, JR., | UNPUBLISHED OPINION |
| Appellant. | |

LEE, C.J. — James Wilford Jr. appeals his conviction for first degree burglary with a firearm sentencing enhancement,[1] arguing that the trial court erred by instructing the jury on accomplice liability.  Because there was sufficient evidence to support a jury instruction on accomplice liability, the trial court did not abuse its discretion.  Accordingly, we affirm Wilford's conviction.

### FACTS

A.    PROCEDURAL HISTORY

On February 7, 2018, the State charged Wilford with first degree burglary with a firearm sentencing enhancement, two counts of theft of a firearm, second degree unlawful possession of a firearm, and second degree theft while armed with a firearm.  The trial court twice allowed the State to amend the information to include a charge of bail jumping and to conform the information to the evidence.

---

[1]  Wilford was also convicted of second degree unlawful possession of a firearm and bail jumping, but he does not appeal these convictions.

B.    TRIAL, VERDICT, AND SENTENCING

Officer Bill Smith is a K-9 officer with the City of Olympia Police Department. Officer Smith testified that on February 4, 2018, he responded to a burglar alarm at an address on Frederick Street Southwest. When Officer Smith arrived at the address, he noted that the front door was open and a person was in the yard looking out over the fence. Officer Smith observed the person crawl over the fence into a field. Officer Smith described the person as wearing a gray sweatshirt, dark pants, and dark hair or a beanie. The person moved toward the woods.

After Officer Smith determined that there was no one in the house, he began preparations to conduct a track with his police dog. Officer Smith began a track into the woods towards a trail. While Officer Smith was conducting the track, he learned that Officer Adam Allison of the City of Olympia Police Department had contacted a suspect approximately a block away from the burglary address. Officer Allison identified Wilford as the person he stopped.

Officer Smith contacted Officer Allison and confirmed that the suspect matched the description of the person Officer Smith had seen climb over the fence. Officer Smith terminated the K-9 track and went to Officer Allison's location. Officer Smith identified the suspect in custody as the person he saw climb over the fence. Officer Smith also noted that the suspect's clothes were wet and dirty.

Officer Allison testified that when he stopped Wilford, Wilford was breathing heavily. Wilford's clothes were wet, and had mud and foliage on them. Wilford's appearance was consistent with the conditions of the area where the suspect was being tracked. When Officer Allison conducted a pat-down search of Wilford, he felt a bag, a tablet, and a jewelry box in Wilford's sweatshirt pockets. The bag could be seen without removing it from Wilford's pocket. Wilford's pocket was photographed so the purse could be shown to the burglary victim. Wilford

was arrested for burglary. When Officer Allison transported Wilford to the jail, Wilford said, in an unsolicited statement, "You guys caught me." 1 Verbatim Report of Proceedings (VRP) (June 25, 2019) at 75.

Officer Josh Marcuson of the City of Olympia Police Department also responded to the burglary at Frederick Street. Officer Marcuson testified that while at the house, he observed several items outside, including boxes and a television. When Officer Marcuson entered the house, he observed drawers that had been pulled out, property strewn about the home, and items on the bed. These were typical observations in burglary cases.

Officer Marcuson contacted the homeowner, Kaila Sweeney. Sweeney was outside of the area at the time and unable to return home immediately. Officer Marcuson confirmed with Sweeney that her house was generally cleaned up and was not left in its current condition.

A short time later, Officer Marcuson learned that Officer Allison had located a suspect in the burglary. Officer Marcuson identified Wilford as the person Officer Allison had detained. When Officer Marcuson saw Wilford, he could see items bulging out of his sweatshirt pocket. Officer Marcuson also observed that Wilford's clothing was wet, "kind of like maybe he'd been in the woods or laying down." 1 VRP (June 25, 2019) at 125. And Officer Marcuson saw a white bag or purse in Wilford's sweatshirt pocket. Officer Marcuson took a picture of the bag in Wilford's pocket and sent it to Sweeney. Sweeney confirmed that it was her bag through a text message.

When Officer Marcuson later returned to the house, he learned that a .22 caliber Smith & Wesson firearm was unaccounted for. Officer Marcuson was able to locate the Smith & Wesson in a tote bag with the items that were left outside of the house. The Smith & Wesson firearm was loaded.

3

Deputy Andrew Hansen of the Thurston County Sheriff's Office worked for the City of Olympia Police Department prior to February 2019. Deputy Hansen testified that he responded to Officer Allison's location to assist with the suspect. Deputy Hansen identified Wilford as the suspect Officer Allison had detained. Deputy Hansen recovered several items from Wilford's person that belonged to Sweeney.

Sweeney testified that she owned the residence at Frederick Street. Sweeney had an alarm system that would alert the police if it was activated. On February 4, 2018, Sweeney was contacted by the police regarding an incident at her house. Based on the description of the condition of her house the police gave her, it was apparent someone had been in the house. She also identified some property that belonged to her through text messages with the police. Her television was in the front yard, but she had not left it there. Sweeney had two firearms in the house—a .9 millimeter Ruger semiautomatic handgun and a .22 caliber Smith & Wesson revolver. Both firearms were working and operational. Sweeney did not know Wilford, and she never gave Wilford permission to have any of her property or her firearms.

During the trial, the State proposed an accomplice liability instruction, which stated:

> A person is guilty of a crime if it is committed by the conduct of another person for which he or she is legally accountable. A person is legally accountable for the conduct of another person when he or she is an accomplice of such other person in the commission of the crime.
> A person is an accomplice in the commission of a crime if, with knowledge that it will promote or facilitate the commission of the crime, he either:
> (1) solicits, commands, encourages, or requests another person to commit the crime; or
> (2) aids or agrees to aid another person in planning or committing the crime.
> The word "aid" means all assistance whether given by words, acts, encouragement, support, or presence. A person who is present at the scene and ready to assist by his or her presence is aiding in the commission of the crime. However, more than mere presence and knowledge of the criminal activity of another must be shown to establish that a person present is an accomplice.

4

A person who is an accomplice in the commission of a crime is guilty of that crime whether present at the scene or not.

Clerk's Papers (CP) at 83. The State argued that the instruction was appropriate because "the defense is gonna try to argue during this case . . . that, well, no one saw Mr. Wilford in the house, so he can't be guilty of the burglary." 2 VRP (July 1, 2019) at 153. Wilford objected to including an accomplice liability instruction because "there has been zero evidence produced that Mr. Wilford acted as an accomplice to another person." 2 VRP (July 1, 2019) at 161. Wilford also argued that the instruction would be confusing to the jury. The trial court gave the accomplice liability instruction to the jury.

The jury found Wilford guilty of first degree burglary with a firearm sentencing enhancement, unlawful possession of a firearm, one count of theft of a firearm, theft in the second degree with a firearm sentencing enhancement, and bail jumping. The jury found Wilford not guilty of the second count of theft of a firearm.

At sentencing, the trial court vacated the convictions for theft of a firearm and second degree theft because they merged with the conviction for first degree burglary. The trial court imposed a standard range sentence of 89 months of total confinement.

Wilford appeals.

ANALYSIS

Wilford argues that the trial court erred by instructing the jury on accomplice liability because there was no evidence supporting the accomplice liability jury instruction. We disagree.

A.    LEGAL PRINCIPLES

We review the trial court's choice of jury instructions for an abuse of discretion. *State v. Hathaway*, 161 Wn. App. 634, 647, 251 P.3d 253, *review denied*, 172 Wn.2d 1021 (2011). Jury

instructions are appropriate if they are supported by substantial evidence, allow the parties to argue their theories of the case, are not misleading, and when read as a whole properly state the applicable law. *State v. Fernandez-Medina*, 141 Wn.2d 448, 455-56, 6 P.3d 1150 (2000); *State v. Anderson*, 3 Wn. App. 2d 67, 69-70, 413 P.3d 1065 (2018). When determining whether evidence is sufficient to support a jury instruction, we review the evidence in the light most favorable to the party requesting the instruction. *Fernandez-Medina*, 141 Wn.2d at 455-56.

A person is an accomplice if he "solicits, commands, encourages, or requests another person to commit the crime," or "aids or agrees to aid another person in planning or committing the crime." CP at 139; RCW 9A.08.020(3)(a)(i)-(ii). "Mere presence of the defendant without aiding the principal—despite knowledge of the ongoing criminal activity—is not sufficient to establish accomplice liability." *State v. Truong*, 168 Wn. App. 529, 540, 277 P.3d 74, *review denied*, 175 Wn.2d 1020 (2012).

B.      SUFFICIENT EVIDENCE SUPPORTS THE ACCOMPLICE LIABILITY INSTRUCTION

Wilford argues that there is no evidence to support giving an accomplice liability instruction because there was no evidence that another person was involved and Wilford was merely in possession of stolen property. Although Wilford is correct that the State presented no direct evidence regarding another person being involved in the burglary, his argument fails to view the evidence about Wilford's actual actions in the light most favorable to the State.

Here, Wilford was not merely present at the scene of a crime nor was he simply in possession of stolen property. The evidence establishes that at least one person entered Sweeney's home and removed some of her personal property from the house. And Wilford was seen on Sweeney's property by Officer Smith before he was apprehended a block away with pieces of Sweeney's personal property.

When viewing the evidence in the light most favorable to the State, it is reasonable to conclude that, if Wilford did not enter Sweeney's house, another person did and Wilford was aiding that person by being a lookout or carrying some of the stolen property. Therefore, substantial evidence supports giving the accomplice liability instruction, and the trial court did not abuse its discretion by giving the instruction. Accordingly, we affirm Wilford's conviction for first degree burglary with a firearm sentencing enhancement.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

                                                , C.J.

                                          Lee, C.J.

We concur:

Worswick, J.

Veljacic, J.