# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 59063-8-II |
| Respondent, | |
| v. | |
| ARTEM VALENTINOVICH PLOTNIKOV, | UNPUBLISHED OPINION |
| Appellant. | |

CRUSER, C.J.—In July 2023, a man entered the Lucky Seven Food Mart in Lacey, used a hammer to break a glass display case containing vaporizers (vapes), threatened a store employee, and proceeded to steal a number of vapes. According to testimony from a Lucky Seven employee and the 911 call the employee placed to report the crime, after stealing the vapes the perpetrator walked across the street towards an alleyway next to the O'Reilly Auto Parts. Within minutes, police officers arrived in the alleyway and found Artem Plotnikov, whose clothing and physical appearance matched the description of the perpetrator. While Plotnikov was in police custody in the alleyway, a Lucky Seven customer who witnessed the robbery walked by and confirmed that Plotnikov was the man who robbed the Lucky Seven. Upon searching Plotnikov's person, police found at least four vapes. A few hours after police arrested Plotnikov, an O'Reilly employee found a hammer and tote bag in a parking spot close to where the officers first encountered Plotnikov. A jury found Plotnikov guilty of robbery in the first degree while armed with a deadly weapon.

Plotnikov appeals, arguing that the State failed to present sufficient evidence that he was the perpetrator of the robbery. He also argues that he received ineffective assistance of counsel because his counsel did not request a missing evidence instruction regarding security footage from the Lucky Seven, which was deleted before police attempted to obtain it. We affirm and hold first, that the evidence presented at trial was sufficient for a jury to find Plotnikov guilty; and second, that Plotnikov fails to demonstrate that he received ineffective assistance of counsel, as he was not entitled to the missing evidence instruction.

FACTS

In July 2023, Plotnikov was charged with robbery in the first degree while armed with a deadly weapon, following events that occurred on July 22, 2023. After a 6-day trial, a jury found Plotnikov guilty as charged. The court sentenced Plotnikov to serve a total of 106 months of confinement—82 months for the robbery combined with a 24-month enhancement for the use of a deadly weapon. Additionally, the court sentenced Plotnikov to 18 months of community custody.

I. EVIDENCE PRESENTED AT TRIAL

Relevant to establishing the identity of the perpetrator, the jury heard testimony from two eyewitnesses (a Lucky Seven employee and a Lucky Seven customer), as well as multiple law enforcement officers involved in responding to the robbery and the investigation that followed. The jury also heard a recording of the 911 call from the store employee reporting the robbery, and the jury viewed footage from a patrol vehicle dashcam that shows police locating Plotnikov in the alleyway shortly after the robbery. The jury also viewed photographs of physical evidence recovered by the police. The security footage from the Lucky Seven automatically expired before police sought to recover it.

A. Testimony of Lucky Seven Employees & the 911 Call

Derek Graves, a Lucky Seven employee who was working at the time of the robbery and witnessed the event, testified at trial. Graves testified that on the day in question, a man entered the store, pulled down a glass case using a hammer, shattered the case, and proceeded to rummage through the glass and steal a number of vapes. The man waved the hammer in Graves's direction "in threatening motions," while Graves stood roughly six to eight feet away from him. 3 Verbatim Rep. of Proc. (VRP) at 357. When the robbery occurred, Graves was assisting a customer named Lorenzo Lopez. When asked at trial if he would be able to recognize the perpetrator if he saw him again, Graves replied, "I wouldn't say so unless I saw a picture of the day of him, then I could because then I – my description of his clothing, like, matched up to when I saw him." 2 VRP at 318.

The jury also heard the audio recording of the 911 call Graves made to report the robbery. In the recording, Graves explained to the operator that a man entered the store and using a hammer, pulled down and broke a glass case containing vapes, and swung the hammer in Graves's direction. While Graves was on the phone with the operator, he could still see the perpetrator, who had left the store and was casually walking nearby. Graves described the perpetrator's appearance to the operator, stating that he was a white man, who "looked about maybe 35 or so," and was wearing glasses, a black hoodie, black sweatpants, white shoes, and carried a black bag and a red bag. Ex. 1, at 1 min., 4 sec. While talking to the operator and watching the perpetrator walk away, Graves explained that the man walked across the street, near the O'Reilly Auto Parts, and then "into the alleyway of O'Reilly's." 3 VRP at 371. At that point, Graves lost sight of the man but the police had "pulled up over there," near the alleyway. *Id.*

Chong Namkung, another Lucky Seven employee who was working at the time of the crime, also testified briefly at trial. Namkung was in the restroom when the robber entered the store and broke the glass case. When she came out of the restroom, she saw Graves tell the man to leave and witnessed the man steal a number of vapes and leave. She did not offer any testimony regarding the appearance or identity of the robber.

B. Testimony of Police Officers & Dashcam Footage

The jury also heard testimony from Officer Keith Mercer, who responded to the 911 call. Mercer testified that within a few minutes of being dispatched, the officers spotted an individual near the O'Reilly Auto Parts who matched the description of the perpetrator. He stated, "I was advised that I was looking for a white male. . . . someone in a black hoodie, black pants, carrying some type of red colored backpack." *Id.* at 382. Mercer explained that as he approached Plotnikov in the alleyway, "all of that fit," because Plotnikov had on a dark colored hoodie, dark pants, and the red backpack. *Id.* When asked if he could identify the individual he had contact with, Mercer identified Plotnikov, sitting at the defendant's table in the courtroom. Mercer testified that when he interacted with Plotnikov, he had what appeared to be a vape on him.

The jury also viewed the footage from Officer Mercer's dashcam, which shows the patrol car approaching Plotnikov in the alleyway. The footage shows the car approaching a man who is smoking, wearing a black hoodie, glasses, black pants, gloves, and a red messenger style sling bag.

Officer Andrea Moore also testified at trial. Moore testified that after detaining Plotnikov, the officers searched the area for the hammer but the search was unsuccessful. However, roughly two hours after Officer Moore initially responded to the scene, she returned to the alleyway near the O'Reilly Auto Parts after receiving a call from a store employee. Moore explained that "[i]n

the same alleyway that we believed the suspect to have traveled down, there was now an empty parking spot and a black tote, a smaller, thin black tote, was laying on the ground," and inside the tote, the officers found a hammer. *Id.* at 459. Moore also testified that when the officers searched Plotnikov, they found that he had a bag of vapes on his person. One of the exhibits published for the jury was a photograph of the black tote bag and the hammer found in the alleyway, as well as the small bag of vapes found on Plotnikov's person.

C. Testimony of Lorenzo Lopez

The jury also heard testimony from Lorenzo Lopez, the customer who Graves was assisting at the time of the robbery. After leaving the Lucky Seven, Lopez went to the nearby Rite Aid. On his way to Rite Aid, Lopez walked by the police and Plotnikov, who was sitting on the ground in handcuffs. When asked what he said to the police, Lopez testified "first, I raised my finger. I said, 'Good job.' " 4 VRP at 560-61. "I told [the police] that that was the individual that had broke the case." *Id.* at 561. Lopez testified that this interaction occurred approximately eight minutes after the robbery.

II. ALLEGED "MISSING EVIDENCE"

On appeal, Plotnikov takes issue with the fact that defense counsel did not request a missing evidence instruction for the surveillance footage from Lucky Seven. During the investigation, Graves informed the police officers of the existence of surveillance footage at the Lucky Seven. Graves told the officers how to obtain the footage but because he did not have access to it, he did not show them the footage himself. According to Officer Moore, due to an oversight and lack of communication, the surveillance footage was never picked up by the police. Moore testified that the prosecutor asked her to attempt to retrieve the video when it was determined that the case

would be proceeding to trial. By that time, roughly two months after the robbery, the security surveillance footage was gone, as it automatically deletes after a couple of weeks.

At trial, an evidence technician with the Lacey Police Department testified that the five vapes that were found on Plotnikov's person—and photographed in exhibit 26—were marked for destruction. The vapes were destroyed the month before trial.

## ANALYSIS

Plotnikov raises two assignments of error in this appeal. First, he contends that the evidence was insufficient for the jury to find that he was the perpetrator of the robbery. Second, he argues that he was deprived of the effective assistance of counsel because his attorney did not request a missing evidence instruction related to the security footage from the Lucky Seven Food Mart. We reject both contentions.

## I. SUFFICIENT EVIDENCE

Plotnikov argues that the State failed to present sufficient evidence of the identity of the person who robbed the Lucky Seven Food Mart. We disagree.

The test for determining the sufficiency of evidence is whether any rational trier of fact could find the elements of the charged crime beyond a reasonable doubt after viewing the evidence in a light most favorable to the State. *State v. Gouley*, 19 Wn. App. 2d 185, 194, 494 P.3d 458 (2021). A challenge to the sufficiency of the evidence admits the truth of the State's evidence and all reasonable inferences arising from that evidence. *State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014). We resolve all reasonable inferences in favor of the State and interpret inferences most strongly against the defendant. *Gouley*, 19 Wn. App. 2d at 194. Circumstantial and direct evidence are equally reliable. *State v. Cardenas-Flores*, 189 Wn.2d 243, 266, 401 P.3d 19 (2017).

Appellate courts defer to the trier of fact on issues of witness credibility, persuasiveness of the evidence, and conflicting testimony. *State v. Truong*, 168 Wn. App. 529, 534, 277 P.3d 74 (2012).

Plotnikov argues that the evidence proving his identity was insufficient because the State did not ask Graves, Namkung, or Lopez to identify Plotnikov in the courtroom at trial; because the State did not introduce the body cam footage from the officers who responded to the robbery call; because the on-scene identification by Lopez was suggestive; because the State did not introduce surveillance footage from the store; and because Graves described the robber to 911 as, among other things, being in possession of a black bag and a hammer but the black bag and hammer were not found on Plotnikov's person when he was apprehended.

Plotnikov points us to our unpublished decision in *State v. Green*,[1] in which we rejected a challenge to the sufficiency of the evidence. In *Green*, the State presented evidence that Green matched the physical description of the perpetrator provided by witnesses; officers found Green in a vehicle of the same make, model and color that the robber drove away in; officers found a gun in the car with Green that matched the description of the gun used in the robbery; Green wore the same shoes as the perpetrator; and the jury viewed a surveillance video of the robbery and had the opportunity to compare Green to the man in the video. *State v. Green*, No. 56841-1-II, slip op. at 10-11 (Wash. Ct. App. Nov. 7, 2023) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2056841-1-II%20Unpublished%20Opinion.pdf.

Plotnikov opines that the evidence in *Green* was more compelling than the evidence here, and thus the evidence in this case is insufficient. Plotnikov's argument is unpersuasive. The

---

[1] No. 56841-1-II, slip op. (Wash Ct. App. Nov. 7, 2023) (unpublished) https://www.courts.wa.gov/opinions/pdf/D2%2056841-1-II%20Unpublished%20Opinion.pdf. *See* GR 14.1.

evidence presented here was more than sufficient to sustain the jury's verdict. Graves described being six to eight feet away from the robber when the robbery occurred, and that the robber broke a glass case containing vapes and swung the hammer in Graves's direction. Graves described the robber as wearing a black hoodie, black sweatpants, glasses, white shoes, and carrying a black bag as well as a red bag on his back. Graves further described the perpetrator's appearance as a white man, who "looked about maybe 35 or so." Ex. 1, at 1 min., 4 sec. Graves also described watching the perpetrator walk across the street near the O'Reilly Auto Parts, and then "into the alleyway of O'Reilly's." 3 VRP at 371. The police found Plotnikov within a few minutes of being dispatched near the O'Reilly Auto Parts store, and he matched the description of the perpetrator. Officer Mercer testified, "I was advised that I was looking for a white male. . . . someone in a black hoodie, black pants, carrying some type of red colored backpack." *Id.* at 382. When Plotnikov was apprehended, he was wearing a black hoodie, black sweatpants, glasses, and carried a red bag on his back, just as Graves described.

The jury also viewed footage from the patrol vehicle dashcam, which shows that Plotnikov matched the description that Graves gave of the robber to the 911 operator. Furthermore, officers found Plotnikov in the exact area where Graves said the robber was heading within minutes of the crime. The jury also heard from Lopez, who saw the police detain Plotnikov minutes after the robbery, and identified Plotnikov as the perpetrator. Police found vapes on Plotnikov's person and discovered the hammer in the same alleyway where they found Plotnikov shortly after the robbery. Even though the physical vapes found on Plotnikov's person were destroyed prior to trial, the jury saw a photo of the vapes the officers recovered while searching Plotnikov, as well as the hammer found in the same alleyway where Plotnikov was found.

Viewed in the light most favorable to the State, the evidence presented in this case easily surpasses the standard for sufficiency of the evidence. We affirm.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Plotnikov next argues that he received ineffective assistance of counsel because his counsel failed to request a missing evidence instruction regarding the surveillance footage from the Lucky Seven.[2]

The State argues that Plotnikov was not entitled to a missing evidence instruction, and therefore defense counsel was not deficient for declining to propose one. Moreover, the State contends, Plotnikov cannot demonstrate prejudice.

The United States Constitution and our state constitution guarantee a right to effective counsel at all stages of a criminal case. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22. "Courts engage in a strong presumption counsel's representation was effective." *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). To establish ineffective assistance of counsel, a defendant must show that counsel's performance was (1) deficient, and (2) resulted in prejudice. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Performance is deficient if it falls below an objective standard of reasonableness based on all of the circumstances. *Id*. at 687-88. Prejudice ensues where there is a reasonable probability that the result of the

_____

[2] In introducing his argument regarding ineffective assistance of counsel, Plotnikov briefly states that he was entitled to "a 'missing evidence' instruction for both the surveillance footage of the robbery and the vapes found in Mr. Plotnikov's possession as a result of a search incident to his arrest." Br. of Appellant at 27. However, he focuses all of his argument on the security footage, not the vapes. We will not review an issue raised in passing or unsupported by authority or persuasive argument. *State v. Johnson*, 119 Wn.2d 167, 171, 829 P.2d 1082 (1992). Because Plotnikov does not meaningfully argue that he received ineffective assistance of counsel as a result of counsel's decision not to seek a missing evidence instruction regarding the vapes found on Plotnikov's person, we decline to reach this issue.

proceeding would have differed had counsel not performed deficiently. *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 36, 296 P.3d 872 (2013). If a defendant fails to show either prong of the ineffective assistance of counsel test, this court's inquiry need go no further. *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 673, 101 P.3d 1 (2004).

In addition to these showings, when a defendant's claim of ineffective assistance of counsel rests on defense counsel's decision not to request a particular jury instruction, the defendant must show that he was entitled to the instruction. *State v. Classen*, 4 Wn. App. 2d 520, 539-40, 422 P.3d 489 (2018). If that showing is made, the defendant must then demonstrate that the failure to give the instruction resulted in prejudice. *Id.*

"The missing evidence instruction derives from the missing witness doctrine." *State v. Derri*, 17 Wn. App. 2d 376, 404, 486 P.3d 901, *aff'd but criticized*, 199 Wn.2d 658, 511 P.3d 1267 (2022). The instruction provides for a permissive inference that when evidence is within the control of a party " 'whose interest it would naturally be to produce it' " and the party fails to produce it, the jury may infer that the evidence would be unfavorable to the party. *Id.* (internal quotation marks omitted) (quoting *State v. Blair*, 117 Wn.2d 479, 485-86, 816 P.2d 718 (1991)). Under the closely related missing witness doctrine, a party is not entitled to a missing witness instruction where the witness is equally available to both parties. *Blair*, 117 Wn.2d at 490. Stated another way, the evidence must be uniquely available to the State. *Derri*, 17 Wn. App. 2d 407. A missing evidence instruction "is not warranted when the evidence is unimportant or merely cumulative, or when its absence is satisfactorily explained." *Id.* at 404.

In *Derri*, Division One affirmed the trial court's decision not to give a missing evidence instruction regarding security camera footage from a bank because, as in this case, the footage was

No. 59063-8-II

in the possession and control of a non-State actor and was deleted by the bank according to their standard video-retention policy. *Id.* at 407.

In this case, likewise, the video surveillance footage was not uniquely available to the State. Indeed, Plotnikov does not explain why his own trial counsel could not have obtained the surveillance footage had counsel believed it would aid in Plotnikov's defense. Moreover, the State adequately explained the reason for the absence of the footage at trial. Accordingly, Plotnikov was not entitled to a missing evidence instruction and counsel did not perform deficiently by not proposing one.

## CONCLUSION

We conclude that sufficient evidence supports the jury's verdict. We further conclude that Plotnikov was not denied the effective assistance of counsel. We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, C.J.

We concur:

LEE, J.

PRICE, J.

11