144 P.3d 358 (2006)
STATE of Washington, Respondent,
v.
G.M.V., Appellant.
No. 24017-7-III.
Court of Appeals of Washington, Division 3.
October 10, 2006.
*359 Susan Marie Gasch, Gasch Law Office, Spokane, WA, for Appellant.
Carole Louise Highland, Attorney at Law, Grant County Pros. Attorney. Office, Ephrata, WA, for Respondent.
SWEENEY, C.J.
¶ 1 Proof of constructive possession requires a showing of dominion and control over the particular place where contraband is found. The question presented here is whether a juvenile who moves out of an upstairs bedroom in her parents' house and into the basement retains dominion and control over the upstairs bedroom. We do not agree with the juvenile court that G.M.V. had constructive possession of a gun found in the upstairs bedroom. And we reverse her convictions for unlawful possession of an illegally altered (sawed-off) shotgun. We affirm, however, G.M.V.'s conviction for possession of marijuana in the basement room.

FACTS
¶ 2 Police executed a warrant to search a house in Moses Lake, Washington. The mother and stepfather of 15-year-old G.M.V. owned and occupied the house.
¶ 3 The police had made a couple of controlled drug buys from G.M.V.'s boyfriend, Ivan Longoria. They watched Mr. Longoria leave G.M.V.'s house for a meeting with a confidential informant. They followed him to *360 the buy location and then back to the house. Mr. Longoria came to a second buy from another direction, but again returned to the house. Mr. Longoria testified that he stayed at the house a lot but did not live there.
¶ 4 Police then raided the home. They found G.M.V.'s stepfather, her two younger brothers, and G.M.V. in the home. G.M.V. came out of a basement bedroom. An officer read everyone their constitutional rights. He could not swear that he read G.M.V. her rights as a juvenile. And he could not affirmatively say that she waived her rights.
¶ 5 The basement bedroom smelled of marijuana. Inside, police found a small amount of marijuana and a digital scale on top of a television, and 817 grams of marijuana under a pile of clothes near the bed. G.M.V. said she knew there were drugs in the house. She said they belonged to Mr. Longoria and that she knew he was a dealer.
¶ 6 In an upstairs bedroom, police found an illegally sawed-off shotgun on a shelf with some stuffed animals in a closet. G.M.V. had recently occupied this upstairs bedroom.
¶ 7 The State charged G.M.V. with possession of the marijuana in the basement bedroom. The State also charged her with constructive possession of the unlawfully altered gun found in the upstairs bedroom. G.M.V. claimed unwitting possession of the marijuana. She denied possession of the shotgun.
¶ 8 At the adjudication hearing, G.M.V.'s mother testified that G.M.V. vacated the upstairs bedroom and moved to the basement some weeks before the raid. One of the officers testified that G.M.V. and her mother told him that the upstairs room had been G.M.V.'s "just recently" and that she had "barely moved." Report of Proceedings (RP) at 14, 15. A second officer said the mother told him that G.M.V. "had stayed in that room in the past but was currently living in the downstairs bedroom." RP at 39. G.M.V.'s mother testified that the upstairs room "was nobody's" at the time of the search. RP at 52-53, 56.
¶ 9 Mr. Longoria testified that he shared the basement room with G.M.V. on the three or four nights a week he stayed at the house. He said he brought the marijuana and scales into the house the night before the raid, while G.M.V. was asleep. He lived in Othello and came to Moses Lake to sell drugs. He said he never sold drugs from the house because he did not want G.M.V. to know.
¶ 10 The juvenile court adjudicated G.M.V. guilty of constructive possession of the marijuana. The judge found that G.M.V. had dominion and control over the basement bedroom and that the possession of the marijuana was not unwitting.
¶ 11 The court also found that G.M.V. constructively possessed the sawed-off shotgun found in the upstairs bedroom. The court found that the upstairs room had been G.M.V.'s until a few days before the raid. She still had most of her things there and that suggested that her move downstairs was not complete. The judge theorized that G.M.V. would still have been going in and out of the room to change clothes and get her things. Therefore he concluded that she had dominion and control of the room. The court found that G.M.V. knew about the shotgun because it was in plain view.

DISCUSSION
Ineffective Assistance
¶ 12 G.M.V. first contends that her lawyer was ineffective because he did not challenge the search warrant. She argues that the State failed to show a nexus between the house and the drugs it was searching for. Without that nexus, she contends, the State did not have probable cause to search the house. Therefore the court would have granted a motion to suppress.
¶ 13 To show ineffective assistance of counsel, G.M.V. must establish that (1) her counsel's conduct fell below an objective standard of reasonableness, and (2) there is a reasonable likelihood that, but for the deficient conduct, the outcome of her adjudication would have been different. See State v. Thomas, 109 Wash.2d 222, 225-26, 743 P.2d 816 (1987) (adopting test from Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). We strongly presume that counsel's representation was appropriate. State v. McFarland, 127 Wash.2d 322, 335, 899 P.2d 1251 (1995). We *361 consider the representation in light of the entire record and presume that it is within the broad range of reasonable professional assistance. State v. Hakimi, 124 Wash.App. 15, 22, 98 P.3d 809 (2004) (citing State v. Osborne, 102 Wash.2d 87, 99, 684 P.2d 683 (1984)).
¶ 14 The presumption of effectiveness fails, however, if there is no legitimate tactical explanation for counsel's actions. State v. Aho, 137 Wash.2d 736, 745-46, 975 P.2d 512 (1999). Failing to bring a motion to suppress evidence when a search warrant is invalid would be ineffective assistance under this standard. State v. Reichenbach, 153 Wash.2d 126, 130-31, 101 P.3d 80 (2004). In Reichenbach, for example, counsel knew facts that rendered the warrant invalid on its face: the police received information that negated probable cause before the warrant was executed. Id.
¶ 15 G.M.V. does not contend the warrant here was invalid on its face. She challenges instead the nexus between Mr. Longoria's criminal activities and her parents' house. She cites to State v. Thein, 138 Wash.2d 133, 977 P.2d 582 (1999). The Thein court held that a warrant to search for drugs in a particular place must be based on more than generalized notions of the supposed practices of drug dealers. Id. at 147, 977 P.2d 582. Rather, the warrant must contain specific facts tying the place to be searched to the crime. Id.
¶ 16 Thein is distinguishable. There, a warrant to search a drug dealer's home was based solely on evidence of drug activity elsewhere. But the affidavit supporting this warrant did not rely on generalized beliefs about the habits of drug dealers as in Thein. The warrant was to search the place Mr. Longoria left from and returned to before and after he sold drugs. This was a nexus that established probable cause that Mr. Longoria had drugs in the house. There was no ineffective assistance of counsel here since a challenge to the warrant would have failed.
Necessity for Suppression Hearing
¶ 17 G.M.V. did not ask for a CrR 3.5 hearing. She now contends that due process requires the court to conduct a CrR 3.5 hearing in every case. We review due process challenges de novo. State v. Joy, 128 Wash.App. 160, 163, 114 P.3d 1228 (2005), review denied, 156 Wash.2d 1021, 132 P.3d 735 (2006).
¶ 18 G.M.V.'s contention fails.
¶ 19 G.M.V. relies on State v. Tim S., 41 Wash.App. 60, 701 P.2d 1120 (1985). That case is distinguishable. The court in Tim S. admitted and treated as substantive evidence an incriminating statement of questionable voluntariness made under police interrogation without benefit of Miranda[1] warnings. Id. at 62-63, 701 P.2d 1120.
¶ 20 When there is a jury trial, due process requires a pretrial hearing to decide the admissibility of the defendant's incriminating statements. State v. Lopez, 67 Wash.2d 185, 188-89, 406 P.2d 941 (1965) (citing Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964)). CrR 3.5 requires a pretrial hearing to prevent the jury from hearing an involuntary confession. State v. Myers, 86 Wash.2d 419, 425-26, 545 P.2d 538 (1976). But G.M.V. was tried by the court sitting without a jury, because this was a juvenile proceeding. The evidentiary rules in juvenile adjudications are less rigorous. In re Welfare of Noble, 15 Wash.App. 51, 58, 547 P.2d 880 (1976).
¶ 21 G.M.V. was in custody. She was advised of her Miranda rights. Significantly, she does not contend that her statements were involuntary. Moreover, the prosecutor described the interrogation procedure to satisfy the court that G.M.V.'s statements were voluntary. Accordingly, neither the Fifth Amendment nor the due process clause of the Fourteenth Amendment was violated. Lopez, 67 Wash.2d at 188-89, 406 P.2d 941. If no genuine issue exists as to whether a statement by the defendant was voluntary, the question whether admitting the statement constituted an error of constitutional magnitude does not arise. State v. Williams, 137 Wash.2d 746, 749-50, 975 P.2d 963 (1999).
*362 ¶ 22 G.M.V. cites to no authority for the proposition that a juvenile court cannot incorporate a CrR 3.5 inquiry into the factfinding hearing. The State is required to prove by a preponderance that a defendant affirmatively waived her right to remain silent only when she disputes the voluntariness of a statement. See, e.g., State v. Parra, 96 Wash.App. 95, 100, 977 P.2d 1272 (1999). The record suggests no reason for a separate hearing.
Possession of the Gun
¶ 23 We are persuaded, however, by G.M.V.'s challenge to the sufficiency of the evidence that she was in constructive possession of the shotgun in the upstairs bedroom.
¶ 24 Whether she possessed the gun is a question of fact. State v. Roberts, 80 Wash.App. 342, 353-54, 908 P.2d 892 (1996). The evidence is sufficient to support a finding of guilt if a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, accepting as true the State's evidence and all reasonable inferences to be drawn from it. State v. Joy, 121 Wash.2d 333, 338, 851 P.2d 654 (1993) (citing State v. Green, 94 Wash.2d 216, 221, 616 P.2d 628 (1980)); State v. Salinas, 119 Wash.2d 192, 201, 829 P.2d 1068 (1992).
¶ 25 To convict G.M.V. of possession of this shotgun, the State had to show that she constructively possessed it. See, e.g., State v. Staley, 123 Wash.2d 794, 798, 872 P.2d 502 (1994). Constructive possession means that the defendant exercised dominion and control. Id. Dominion and control over the premises in which contraband is found is but one factor. The defendant must also have dominion and control over the contraband itself. Roberts, 80 Wash.App. at 353-54, 908 P.2d 892. "By establishing a defendant's dominion and control over the premises in which contraband is found, the State makes out a prima facie case sufficient to raise a rebuttable presumption of constructive possession of the contraband." Id. at 354, 908 P.2d 892 (emphasis omitted) (citing State v. Perry, 10 Wash.App. 159, 162, 516 P.2d 1104 (1973)).
¶ 26 When a minor lives with her parents, however, we cannot presume dominion and control from her mere residence in the home. State v. Douglas S., 42 Wash.App. 138, 142, 709 P.2d 817 (1985). The fact that G.M.V. was a minor living with her parents means additional evidence of dominion and control was necessary.
¶ 27 The evidence of dominion over the upstairs bedroom here was limited. Officer Brian Taylor testified on direct that G.M.V. told him she "just recently" vacated the upstairs room. He said he understood from G.M.V. and her mother that she had "barely moved" downstairs. RP at 14-15. The State points to testimony by an officer who was shown a photograph of "the upstairs bedroom that [G.M.V.] identified as the room she was moving out of." Prosecutor: "Okay. So she specifically told you that was her bedroom?" Officer: "That's correct." RP at 50. The context of this exchange, however, was to identify the room, not to pinpoint the time of G.M.V.'s departure from it. Officer Kevin Dobson testified that the mother told him at the scene that G.M.V. "had stayed in that room in the past but was currently living in the downstairs bedroom." RP at 39.
¶ 28 Based on this, the court found that the upstairs bedroom was "last occupied" by G.M.V. Clerk's Papers (CP) at 24 (finding of fact 27). It then found that the room was her bedroom. CP at 26 (finding of fact 37). The latter finding is not supported by this record. And, accordingly, the conclusion that G.M.V. had constructive possession of the shotgun is likewise unsupported.
¶ 29 The State has shown, at best, that the upstairs bedroom was G.M.V.'s in the past, but was not hers on the day of this search. The evidence is that, on the day the shotgun was discovered, G.M.V.'s bedroom was in the basement. So, whether she moved out a day before or a month before, the facts do not establish G.M.V.'s dominion and control over the room in her parents' home in which the gun was found at the time the gun was found. Everyone agreed she lived downstairs.
¶ 30 We therefore affirm the conviction for possession of marijuana but reverse the convictions for juvenile in possession of a firearm *363 and possession of a short-barreled firearm.
WE CONCUR: SCHULTHEIS and BROWN, JJ.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).