# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 50327-1-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| THEOTIS LENDELL MOORE, | |
| Appellant. | |

MAXA, C.J. – Theotis Moore appeals his convictions of unlawful possession of a controlled substance with intent to deliver while armed with a firearm (count 1), unlawful possession of methamphetamine with intent to deliver while armed with a firearm (count 2), and first degree unlawful possession of a firearm (count 3). The drugs and firearms he was convicted of possessing were discovered in a search of his residence pursuant to a search warrant.

We hold that (1) defense counsel's failure to challenge the lawfulness of the search warrant did not constitute ineffective assistance of counsel; (2) the State presented sufficient evidence to prove that Moore was armed with a firearm at the time he committed counts 1 and 2; (3) as the State concedes, the trial court used an incorrect sentencing range on count 3; and (4) Moore's statement of additional grounds (SAG) claims have no merit. Accordingly, we affirm Moore's convictions and sentencing enhancements, but we remand for resentencing.

FACTS

In July 2016, Pierce County Sheriff's Deputy Jesse Hotz began investigating Moore. He employed a confidential informant (CI) who had previously purchased drugs for the Sheriff's Department. The CI also previously had purchased controlled substances from Moore multiple times.

In a controlled buy, the CI purchased controlled substances from Moore while under police surveillance. Another deputy observed Moore leave his apartment in a Cadillac Escalade and kept him under constant surveillance until he reached the place of the transaction.

Hotz made application for a search warrant, submitting an affidavit that recited the facts stated above and identified Moore's address. A superior court judge issued a warrant authorizing a search of Moore, his apartment, and his vehicle.

On August 18, 2016, Hotz and several deputies executed the search warrant on Moore's apartment. Moore and his girlfriend Melissa Scanlan were in bed when the deputies entered. In the master bedroom the deputies discovered multiple oxycodone pills and a baggie of methamphetamine as well as a digital scale, small plastic bags, and cash. They also found an unloaded semiautomatic handgun on a shelf in the bedroom closet.

The State charged Moore with unlawful possession of a controlled substance with intent to deliver while armed with a firearm, unlawful possession of methamphetamine with intent to deliver while armed with a firearm, and first degree unlawful possession of a firearm.

At trial, the deputies testified to finding the drugs and the firearm as discussed above. Doug Hyland testified on behalf of Moore, stating that he owned the firearm and had placed it in the closet.

The jury found Moore guilty as charged.  Moore appeals.

ANALYSIS

A.    INEFFECTIVE ASSISTANCE OF COUNSEL

Moore argues that defense counsel's failure to file a motion to suppress the results of the search of his apartment constituted ineffective assistance of counsel.  He claims that nothing in the affidavit in support of the warrant application made it probable that drugs and evidence would be found in his apartment.  We disagree.

1.    Legal Principles

Ineffective assistance of counsel arises from the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution.  *State v. Estes*, 188 Wn.2d 450, 457, 395 P.3d 1045 (2017).  To prevail on an ineffective assistance claim, the defendant must show both that (1) defense counsel's representation was deficient and (2) the deficient representation prejudiced the defendant.  *Id.* at 457-58.  Representation is deficient if, after considering all the circumstances, it falls below an objective standard of reasonableness.  *Id.* at 458.  Prejudice exists if there is a reasonable probability that, except for counsel's errors, the result of the proceeding would have differed.  *Id.*

In the context of failing to file a motion to suppress, defense counsel's performance will only be considered deficient if the defendant can show that the trial court likely would have granted the motion.  *State v. D.E.D.*, 200 Wn. App. 484, 490, 402 P.3d 851 (2017).  Accordingly, the question here is whether, had defense counsel filed a motion to suppress evidence relating to the allegedly illegal search, the trial court likely would have granted the motion.

    2.    Validity of Search Warrant

        a.    Probable Cause Requirement

Both the Fourth Amendment to the United States Constitution and article 1, section 7 of the Washington Constitution require probable cause to support the issuance of a search warrant. *See State v. Figeroa Martines*, 184 Wn.2d 83, 90, 355 P.3d 1111 (2015) (Fourth Amendment); *State v. Ollivier*, 178 Wn.2d 813, 846, 312 P.3d 1 (2013) (article 1, section 7). "Probable cause exists when the affidavit in support of the search warrant 'sets forth facts and circumstances sufficient to establish a reasonable inference that the defendant is probably involved in criminal activity and that evidence of the crime may be found at a certain location.' " *Ollivier*, 178 Wn.2d at 846–47 (quoting *State v. Jackson*, 150 Wn.2d 251, 264, 76 P.3d 217 (2003)). There must be "a nexus between criminal activity and the item to be seized and between that item and the place to be searched. *State v. Neth*, 165 Wn.2d 177, 183, 196 P.3d 658 (2008). We consider only the information contained in the affidavit supporting probable cause. *Neth*, 165 Wn.2d at 182.

A search warrant affidavit must identify specific facts and circumstances from which the magistrate can infer that evidence of the crime will be found at the place to be searched. *State v. Thein,* 138 Wn.2d 133, 147, 977 P.2d 582 (1999). If an affidavit is no more than a declaration of suspicion or belief, it is legally insufficient. *Jackson,* 150 Wn.2d at 265.

        b.    Analysis of Search Warrant Validity

Here, the only connection between Moore's apartment and his sale of controlled substances stated in the warrant affidavit was that Moore left from his apartment when he drove to the sale. The question is whether this connection is sufficient to establish probable cause.

Moore relies on *Thein*, where the Supreme Court addressed the State's argument that if there is sufficient evidence to believe that a person is a drug dealer, probable cause automatically exists to search the person's residence. 138 Wn.2d at 141. The court rejected the proposition that "it is reasonable to infer evidence of drug dealing will likely be found in the homes of drug dealers." *Id.* at 147. The court emphasized that probable cause to believe that a person has committed a crime does not create probable cause to search that person's home. *Id.* at 148.

However, here the State does not advocate for an automatic rule. Instead, the State relies on the fact that Moore left his house and immediately drove to meet the CI, where Moore sold him drugs. The State claims that this fact shows a nexus between Moore's drug dealing and his apartment.

The court in *State v. G.M.V.*, 135 Wn. App. 366, 144 P.3d 358 (2006), addressed a similar scenario. In that case, law enforcement obtained a search warrant of the defendant's residence based on the fact that the defendant left from the residence before and returned to it after he sold drugs. *Id.* at 372. The court stated, "The warrant was to search the place Mr. Longoria left from and returned to before and after he sold drugs. This was a nexus that established probable cause that Mr. Longoria had drugs in the house." *Id.*

We agree with *G.M.V.* Moore drove from his apartment to a location where he sold controlled substances to the CI. This means that the controlled substances were in Moore's possession when he left his apartment. Therefore, it is reasonable to infer that evidence of Moore's drug dealing would be found in his apartment. We hold that probable cause supported the warrant to search Moore's apartment.

3.    Analysis of Ineffective Assistance Claim

Based on the analysis above, the trial court would not have granted a motion to suppress the evidence seized from Moore's home. Therefore, it was neither objectively unreasonable nor prejudicial for defense counsel not to challenge the validity of the search warrant. We hold that Moore's claim of ineffective assistance of counsel fails.

B.    SUFFICIENCY OF THE EVIDENCE – FIREARM ENHANCEMENTS

Moore argues that the State did not present sufficient evidence that he was armed with a firearm at the time of his drug delivery and possession crimes. He claims that there was an insufficient connection between him, the firearm found in his bedroom, and his crimes. We disagree.

1.    Sufficiency Standard

The test for determining sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Cardenas-Flores*, 189 Wn.2d 243, 265, 401 P.3d 19 (2017). In a sufficiency of the evidence claim, the defendant admits the truth of the evidence and the court views the evidence and all reasonable inferences drawn from that evidence in the light most favorable to the State. *Id.* Credibility determinations are made by the trier of fact and are not subject to review. *Id.* at 266. Circumstantial and direct evidence are equally reliable. *Id.*

2.    Legal Principles

Under RCW 9.94A.533(3), a court must add additional time to a sentence if the defendant is found to have been armed with a firearm while committing the crime. *State v. Houston-Sconiers*, 188 Wn.2d 1, 16-17, 391 P.3d 409 (2017). "To establish that a defendant was armed for the

6

purpose of a firearm enhancement, the State must prove (1) that a firearm was easily accessible and readily available for offensive or defensive purposes during the commission of the crime and (2) that a nexus exists among the defendant, the weapon, and the crime." *State v. Sassen Van Elsloo*, 191 Wn.2d 798, 826, 425 P.3d 807 (2018).

Regarding the first requirement, the presence or even constructive possession of a weapon found at a crime scene is not enough to establish that the defendant was armed in this context. *Id.* On the other hand, "[t]he defendant does not have to be armed at the moment of arrest to be armed for purposes of the firearms enhancement." *State v. O'Neal*, 159 Wn.2d 500, 504, 150 P.3d 1121 (2007). "[T]he State need not establish with mathematical precision the specific time and place that a weapon was readily available and easily accessible so long as it was at the time of the crime." *Id.* at 504-05. And a drug distribution operation is a continuing crime that is ongoing even when the defendant is elsewhere. *See State v. Neff*, 163 Wn.2d 453, 464-65, 181 P.3d 819 (2008) (stating this principle in the context of a drug manufacturing operation).

Regarding the second requirement, we look to the nature of the crime, the type of firearm, and the context in which it was found to determine if there was a nexus between the defendant, the firearm, and the crime. *Sassen Van Elsloo*, 191 Wn.2d at 827. Significantly, a sufficient nexus exists if there is evidence that the firearm was present to protect an ongoing drug operation. *O'Neal*, 159 Wn.2d at 506; *State v. Eckenrode*, 159 Wn.2d 488, 494-95, 150 P.3d 1116 (2007).

3.    Analysis

When the deputies served the search warrant, Moore was in his bedroom with the firearm and the drugs. The handgun was on a closet shelf where Moore easily could have armed himself. Therefore, a nexus existed between Moore and the gun.

Other evidence establishes the nexus between the gun and the drugs. The deputies recovered a digital scale, small plastic bags, empty prescription bottles, ammunition, and cash. All these items were evidence of an ongoing drug operation. Taking the evidence in a light most favorable to the State, a reasonable jury could find that Moore had the gun to facilitate his crimes or to protect his contraband. *See Neff*, 163 Wn.2d at 462.

Accordingly, we hold that the State presented sufficient evidence to establish that Moore was armed with a firearm at the time of his drug offenses.

C.    INCORRECT SENTENCING RANGE

Moore argues, and the State concedes, that his judgment and sentence contains an incorrect sentencing range for his conviction of first degree unlawful possession of a firearm. The sentencing court calculated Moore's offender score as 3 but the judgment and sentence used the range applied for an offender score of 4. Moore's sentencing range should have been 31-41 months, not 36-48 months. RCW 9.94A.510. Therefore, we hold that the trial court erred in imposing Moore's sentence.

D.    SAG CLAIMS

1.    Probable Cause

Moore asserts that the State lacked probable cause to obtain a search warrant because it did not produce the CI or any evidence of the three alleged controlled purchases. We disagree

The State has a legitimate interest in protecting the identity of CIs. *State v. Moen*, 150 Wn.2d 221, 230, 76 P.3d 721 (2003). The ability to protect an informant's identity from disclosure is termed the "informers privilege," which is the State's right to withhold from disclosure the identity of persons who provide information to law enforcement concerning the commission of crimes. *State v. Atchley*, 142 Wn. App. 147, 155, 173 P.3d 323 (2007). The privilege is recognized by both statute and court rule. RCW 5.60.060(5); CrR 4.7(f)(2). Disclosure is only required if the failure to disclose will infringe on the defendant's constitutional rights. CrR 4.7(f)(2).

We typically balance several competing factors in determining whether to disclose a CI's identity. *Atchley*, 142 Wn. App. at 155-56. However, where the CI provided information relating only to probable cause rather than the defendant's guilt or innocence, disclosure of the CI's identity generally is not required. *Id.* at 156.

Here, the State used the CI's activities only to establish probable cause for the search of Moore's apartment, not Moore's guilt or innocence. Therefore, disclosure was not required. And information provided by an unidentified CI is sufficient to establish probable cause for a search warrant. *State v. Casto*, 39 Wn. App. 229, 233-34, 692 P.2d 890 (1984). Therefore, we reject Moore's argument that the search warrant lacked probable cause.[1]

2. Sufficiency of Evidence – Delivery

Moore claims that the State failed to prove that he delivered a controlled substance because the only drugs put into evidence at trial were validly prescribed to him. We disagree.

---

[1] Moore also generally claims that there was not probable cause to support the search warrant. Because we already have addressed this claim, we do not repeat it here.

9

The State had to prove that Moore delivered a controlled substance to another. RCW 69.50.401(1). It was undisputed at trial that Moore possessed the oxycodone with a valid prescription. At trial, the State presented evidence from Hotz that Moore admitted giving away oxycodone. And Scanlan testified that Moore had lent some oxycodone pills to a man that later paid him back once he got his own prescription filled. This was sufficient evidence to show an unlawful delivery of a controlled substance.

3.  Prosecutorial Misconduct

Moore appears to claim that his trial was tainted by prosecutorial misconduct when the prosecutor implied that his possession of the oxycodone was illegal. We disagree.

To prevail on a claim of prosecutorial misconduct, a defendant must show " 'that the prosecutor's conduct was both improper and prejudicial in the context of the entire record and the circumstances at trial.' " *State v. Thorgerson*, 172 Wn.2d 438, 442, 258 P.3d 43 (2011) (quoting *State v. Magers*, 164 Wn.2d 174, 191, 189 P.3d 126 (2008)). We review allegedly improper arguments of the prosecutor in the context of the total argument, the evidence addressed during argument, the issues in the case, and the trial court's instructions. *State v. Russell*, 125 Wn.2d 24, 85-86, 882 P.2d 747 (1994).

As we noted above, the State had to prove only that Moore delivered a controlled substance to another. That Moore had a valid prescription for the oxycodone did not mean that the State had no evidence of an unlawful delivery. And Moore statements to Hotz coupled with Scanlan's testimony proved that delivery. The State did not present false evidence that Moore possessed or sold illegal drugs as Moore alleges. His claim of prosecutorial misconduct based on this theory fails.

No. 50327-1-II

CONCLUSION

We affirm Moore's convictions of unlawful possession of a controlled substance with intent to deliver while armed with a firearm, unlawful possession of methamphetamine while armed with a firearm, and first degree unlawful possession of a firearm. But we remand for resentencing.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, C.J.


We concur:

_____
MELNICK, J.

_____
SUTTON, J.

11