IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 81039-1-I |
| | ) | |
| Respondent, | ) | UNPUBLISHED OPINION |
| | ) | |
| v. | ) | |
| | ) | |
| FRANKIE STRICKLEN, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

ANDRUS, A.C.J. – Frankie Stricklen challenges his convictions and sentence for unlawful possession of a firearm, unlawful possession of a controlled substance with intent to deliver, and unlawful possession of a controlled substance. Stricklen argues that the trial court should have suppressed the evidence obtained during a search of his apartment and vehicles. He also challenges his conditions of community custody, arguing that the sentencing court unconstitutionally delegated power to the Department of Corrections (DOC) in enabling the Community Corrections Officers (CCOs) to set conditions of community custody.

We conclude that the trial court correctly denied Stricklen's motion to suppress because the warrant was issued with probable cause and the searching officers complied with CrR 2.3(b). We also affirm Stricklen's community custody conditions.

Citations and pin cites are based on the Westlaw online version of the cited material.

FACTS

In June and July 2017, Tacoma Police Officers used a confidential informant (CI) to engage in a controlled buy of cocaine from Frankie Stricklen as part of an ongoing investigation led by Detective Hannah Heilman of the Tacoma Police Department. Detective Heilman noted that this investigation began in June, when she learned from a CI that Stricklen was dealing cocaine. On June 29, Officer Joseph Mettler observed Stricklen leave an apartment building with a backpack and watched him return some time later. Officer Mettler later approached the building and observed Stricklen's name on one of the mailboxes. According to Detective Heilman's statement of probable cause, while Officer Mettler remained at the apartment building, other officers followed Stricklen and observed him sell drugs to the CI. Officers then verified Stricken's address using a utility bill in Stricklen's name, as well as a previous domestic violence report involving Stricklen at the residence.

Within five days of July 25, 2017, officers arranged a second controlled buy using a CI and observed Stricklen leaving and returning to the same apartment building. Again, officers followed Stricklen and observed him sell drugs to the CI.

On July 25, 2017, Detective Heilman sought, and the trial court issued, a search warrant for Stricklen, the apartment, and vehicles the police had observed Stricklen driving, a maroon 2003 Chevrolet Monte Carlo and a yellow 2002 Monte Carlo. In her affidavit, Detective Heilman noted that officers had observed Stricklen driving both vehicles.

On July 31, 2017, six days later, officers executed the search warrant. Officer Michael Young, part of the "entry team," testified that he arrived at the residence and that Stricken was not there, as he had been apprehended elsewhere. Officer Daniel Bortle testified that he performed a traffic stop for purposes of detaining Stricklen after undercover officers notified him as to the location of the yellow Monte Carlo. Stricklen was the sole occupant of the vehicle. Officer Bortle did not search Stricklen's vehicle at that time. Instead, Officer Bortle handcuffed Stricklen and transported him to the apartment. Officers executed the search warrant during this time, while Officer Bortle and Stricklen remained in the patrol car. Officer Young testified that Stricklen was brought to the apartment for a short time but left before the officers concluded their search and before Officer Young had completed an evidence log. Officer Daniel Grant testified that he read the warrant to Stricklen while he sat in the patrol car.

Officer Mettler participated in the search, recovering a baggie containing a "white, chunky substance," which Officer Mettler believed to be crack cocaine, in the yellow Monte Carlo. Officer Grant testified that they found other narcotics, as well as narcotics paraphernalia, in the apartment's kitchen. Officer Albert Malave testified that he recovered a firearm with an attached magazine from the living room floor of the apartment. He also found an extended firearm magazine in the same area.[1]

---

[1] Officer Malave testified that a standard firearm magazine can hold seven bullets. He estimated that an extended magazine can hold significantly more, possibly double the amount of a standard magazine.

Officer Young, the evidence custodian for this search, testified that he logged and maintained custody of collected evidence. As part of his duty to log evidence, Officer Young created a receipt of the items taken from the apartment and vehicles. In addition to the drug evidence and firearm, Officer Young's log identified numerous other items, including documents, pills, and cell phones. Officer Young left a copy of the search warrant and the log on the kitchen table in the apartment. He testified that he did this instead of handing Stricklen a copy because Stricklen was going to be booked into the jail.

The next day, August 1, 2017, the State charged Stricklen with one count of unlawful possession of a firearm, one count of unlawful possession of a controlled substance with intent to deliver, and two counts of unlawful possession of a controlled substance.

Stricklen moved to suppress the evidence collected during the search, claiming that the officers lacked probable cause, that the officers failed to comply with CrR 2.3, that the search affidavit was insufficient to establish dominion and control over the apartment, and that Officer Bortle lacked probable cause to perform the traffic stop. Stricklen later moved to dismiss the charges under CrR 8.3(b), arguing that the assigned prosecuting attorney had failed to file a response to the motion to suppress.

The trial court denied Stricklen's motion to suppress, concluding that the officers had probable cause, the officers complied with CrR 2.3, and the traffic stop of Stricklen was valid. It concluded that all of the evidence seized was admissible at trial. The trial court also denied Stricklen's motion to dismiss under CrR 8.3(b).

- 4 -

On April 2, 2018, a jury found Stricklen guilty of one count of unlawful possession of a firearm, (Count 1), one count of unlawful possession of a controlled substance with intent to deliver, (Count 2), and one count of unlawful possession of a controlled substance (Count 4). It also found that Stricklen was armed with a firearm during the commission of Count 2. That same day, the State moved to dismiss Count 3, unlawful possession of a controlled substance. The trial court granted the State's motion.

The court sentenced Stricken to 152 months in prison, which included a consecutive 36-month firearm enhancement on Count 2. Stricklen timely appealed his judgment and sentence.

ANALYSIS

Stricklen makes three arguments on appeal. First, he argues that the trial court erred when it denied his motion to suppress because the evidence was seized during an unlawful search. He contends that the officers lacked probable cause to search his apartment and vehicles and that, even if the officers had probable cause, the warrant had become stale by the time it was executed. Second, he argues this court should reverse his convictions because the searching officers failed to comply with CrR 2.3(d). Finally, he challenges a condition of community custody authorizing the DOC to modify and set additional conditions of custody, arguing that this delegation violates the separation of powers doctrine.

We conclude the search warrant was supported by probable cause and the information on which it was based was not stale. "Probable cause exists where there are facts and circumstances sufficient to establish a reasonable inference

that the defendant is involved in criminal activity and that evidence of the criminal activity can be found at the place to be searched." State v. Maddox, 152 Wn.2d 499, 505, 98 P.3d 1199 (2004). The issuing judge "is entitled to make reasonable inferences from the facts and circumstances set out in the affidavit." Id.

We generally review the issuance of a search warrant for abuse of discretion, giving great deference to the issuing judge or magistrate. State v. Neth, 165 Wn.2d 177, 182, 196 P.3d 658 (2008). But when a trial court reviews a determination of probable cause, it acts as the appellate court, and its review, like ours, is limited to the four corners of the affidavit supporting probable cause. Id. The trial court's assessment of probable cause is a legal conclusion we review de novo. Id. We similarly review a trial court's conclusions of law de novo. State v. Armenta, 134 Wn.2d 1, 9, 948 P.2d 1280 (1997).

Stricklen asserts that the officers lacked probable cause to search his apartment because the purchases did not occur at the apartment.[2] We disagree. "Absent a sufficient basis in fact from which to conclude evidence of illegal activity will likely be found at the place to be searched, a reasonable nexus is not established as a matter of law." State v. Thein, 138 Wn.2d 133, 147, 977 P.2d 582 (1999). Our courts, however, have found that this reasonable nexus exists when a defendant has left one location to commit a crime and then returned to the same location.

In State v. G.M.V., 135 Wn. App. 366, 372, 144 P.3d 358 (2006), officers obtained a warrant to search the home of G.M.V. after the police had made

---

[2] Stricklen concedes that the officers had probable cause to search the vehicles.

controlled drug buys from G.M.V.'s boyfriend, Ivan Longoria. Although these buys did not occur at the home, the officers followed Longoria back to G.M.V.'s home after each buy. Id. at 369. Officers recovered drugs in the home, as well as an altered shotgun. Id. at 370. The State charged G.M.V. with, and a jury convicted her of, possession of marijuana and the unlawfully altered gun. Id. G.M.V. argued on appeal that her counsel was ineffective for not requesting a suppression hearing because there was no nexus between Longoria's criminal activities and her home. Id. at 371. Division Three disagreed, concluding that "The warrant was to search the place Mr. Longoria left from and returned to before and after he sold drugs. This was a nexus that established probable cause that Mr. Longoria had drugs in the house." Id. at 372.

More recently, Division Two of this court reached the same conclusion in an unpublished opinion, State v. Wood, No. 49593-7-II (Wash. Ct. App. Dec. 19, 2017) (unpublished)[3]. In that case, a confidential informant purchased drugs from Wood in a public parking lot. Wood, slip op. at 2. Officers observed Wood leave from and return to the same residence before and after each controlled buy. Id. Officers also observed Wood using two different vehicles to leave the residence to sell drugs in various parking lots. Id. at 2-3. The officers then obtained a warrant to search Wood's person, vehicles, and residence. Wood, slip op. at 3. The officers recovered drugs and a handgun from the residence, as well as drugs in one of the vehicles. Id. Wood moved to suppress the evidence, arguing that the officers lacked probable cause to search his home. Wood, slip op. at 4. The trial

---

[3] https://www.courts.wa.gov/opinions/pdf/D2%2049593-7-II%20Unpublished%20Opinion.pdf

court denied the motion to suppress, id., and Division Two affirmed, concluding that "Viewing the totality of facts. . ., [the Sheriff]'s statements that Wood was seen going to his home after suspected drug transactions and, on a separate occasion, leaving from his home prior to a suspected drug transaction was sufficient to establish probable cause to search his home for evidence of such illegal activity." Wood, slip op. at 8.

This case is analogous to G.M.V. and Wood. The record here established that officers observed Stricklen leave his home to sell drugs to the CI and then return to that same residence. The record further established that officers verified that Stricklen resided in the apartment by locating a mailbox with his name on it, by finding court records confirming his residence address, and by verifying that Stricklen paid the utility bill at that address. We conclude, as the courts did in G.M.V. and Wood, that the officers had probable cause to search both Stricklen's home and vehicles.

Stricklen makes the alternative argument that even if the officers had probable cause at some point, the information had become stale because of the delay between the last drug transaction and the issuance of the search warrant. But this argument is based on a typographical error in the trial court's findings and is unsupported by the record. The trial court's finding of fact 3 states that the controlled buys occurred on June 29, 2018, and within five days of June 25, 2017. The evidence in the record and in Detective Heilman's affidavit establishes that the controlled buys occurred on June 29, *2017* (not 2018), and within five days of *July* 25, 2017. Officer Heilman applied for the search warrant on July 25, 2017. The

passage of time between the last controlled purchase of drugs and the request for the search warrant was five days, not several weeks, as Stricklen suggests.

Nevertheless, "information is not stale for purposes of probable cause if the facts and circumstances in the affidavit support a commonsense determination that there is continuing and contemporaneous possession of the property intended to be seized." Maddox, 152 Wn.2d at 506. "Staleness . . . involves not only duration but the probability that the items sought in connection with the suspected criminal activity will be on the premises at the time of the search." State v. Perez, 92 Wn. App. 1, 9, 963 P.2d 881 (1998) (three day delay between last observation described in affidavit and issuance of warrant not long enough to render warrant invalid).

Here, the record shows that Detective Heilman was investigating Stricklen after learning from a CI that Stricklen was dealing cocaine and that the investigation culminated in two controlled buys, occurring a month apart. Before each buy, Stricklen left from the same apartment and then returned to the apartment immediately after making the sale. The last buy occurred within 5 days of July 25, 2017, when the search warrant was issued. The search occurred 6 days later, on July 31. The facts recited in the affidavit supported the inference that Stricklen was continuously dealing drugs and that he was leaving from his apartment and returning to it after each sale. These observations support the conclusion that Stricklen regularly sold cocaine. And the officers' observations of Stricklen leaving the house before each sale and returning after each sale support the conclusion that drugs or drug paraphernalia were likely to be found in the

apartment. Given this evidence of ongoing criminal activity, the five-day delay between the last sale and the issuance of the search warrant did not render the warrant stale.

Because the search warrant was based on probable cause and the information on which it was based was not stale, the trial court properly denied Stricklen's motion to suppress.[4]

Stricklen next contends that the searching officers did not comply with CrR 2.3(d), violating his right to be free of unreasonable searches and seizures under article I, section 7 of the Washington State Constitution. CrR 2.3(d) provides in its entirety:

> (d) Execution and Return With Inventory. The peace officer taking property under the warrant shall give to the person from whom or from whose premises the property is taken a copy of the warrant and a receipt for the property taken. If no such person is present, the officer may post a copy of the search warrant and receipt. The return shall be made promptly and shall be accompanied by a written inventory of any property taken. The inventory shall be made in the presence of the person from whose possession or premises the property is taken, or in the presence of at least one person other than the officer. The court shall upon request provide a copy of the inventory to the person from whom or from whose premises the property was taken and to the applicant for the warrant.

Stricklen was not present when the officers began or completed their search of the home. Stricklen does not challenge the trial court's finding 16, stating that "[Officer] Young left a copy of the search warrant and a return was left on the kitchen table

---

[4] Stricklen argues, for the first time on appeal, that the search warrant was overbroad. We decline to address this argument under RAP 2.5. He maintains in the alternative that his counsel was ineffective by failing to raise this issue below but fails to adequately brief the issue. Stricklen merely states that "A successful motion to suppress would have resulted in dismissal," without citing any authority or supporting evidence. We therefore decline to address Stricklen's ineffective assistance claim as well. See Norcon Builders, LLC v. GMP Homes VG, LLC, 161 Wn. App. 474, 486, 254 P.3d 835 (2011) (appellate court will not consider an inadequately briefed argument).

of the defendant's residence." Nor does he challenge finding 17, stating that "[Officer] Grant read the defendant a copy of the search warrant while the defendant was at the premises, handcuffed, and inside a patrol vehicle." These unchallenged factual findings are treated as verities on appeal. State v. Gentry, 125 Wn.2d 570, 605, 888 P.2d 1105 (1995). These findings support the conclusion that law enforcement officers complied with CrR 2.3(d) by giving Stricklen oral notice of the warrant and by leaving a copy of the warrant and a receipt of items taken on the kitchen table in Stricklen's apartment.

Stricklen argues that the officers were required to give him a paper copy of the warrant when they brought him to the residence while they were searching his home.[5] But Stricklen cites no authority for the proposition that the rule mandates delivery in paper form when he was not present when the search began or ended and when an officer read the search warrant to him while present on the site.

Stricklen next challenges the trial court's findings 19 and 20:

> 19. A physical copy of the warrant was provided to the defendant when he reached the Pierce County Jail.

> 20. The fact that the officers did not give a cuffed suspect a copy of the search warrant until he reached the jail was not unreasonable.

And although not explicit from his briefing, Stricklen also appears to challenge the trial court's conclusion of law 4, which stated "The service of the search was proper and in compliance with Criminal Court Rule 2.3."

---

[5] Stricklen also argues that the officers who performed the traffic stop were required to provide him with a copy of the warrant when they stopped his vehicle. But he does not contend that the officers searched his car at that time. And he does not provide any authority for this argument. We thus conclude that Stricklen has inadequately briefed this argument and decline to address it. See RAP 2.5.

"When reviewing a trial court's ruling on a motion to suppress, we determine whether substantial evidence supports the trial court's findings of fact and whether the findings of fact support the trial court's conclusions of law." State v. Russell, 180 Wn.2d 860, 866, 330 P.3d 151 (2014). "Evidence is substantial when it is enough to persuade a fair-minded person of the truth of the stated premise." Id. at 866-67. (quoting State v. Garvin, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009). This court reviews questions of law de novo. Id. at 867.

We agree with Stricken that the record does not support the trial court's finding that Stricklen was provided a copy of the warrant when he arrived at the jail. Officer Grant testified that he handed a copy of the search warrant to the patrol officer who escorted Stricklen to jail. There is no evidence that this copy was subsequently handed to Stricklen. But even without this finding, the trial court's conclusion that the officers complied with CrR 2.3 is supported by findings 16 and 17. Officer Grant read the search warrant to Stricklen while they sat in Officer Bortle's patrol car and Officer Young left a physical copy of the warrant and receipt at the apartment. The record supports the trial court's conclusion that the officer complied with CrR 2.3(d).

Even if the failure to give Stricklen a physical copy of the warrant at the jail is a violation of the court rule, CrR 2.3 is ministerial in nature, and noncompliance does not invalidate a search absent prejudice to the defendant. State v. Ettenhofer, 119 Wn. App. 300, 307, 79 P.3d 478 (2003). Stricklen does not assign error to the trial court's finding 21, that "The defendant did not allege any prejudice in the service of the search warrant." Thus, he cannot challenge this finding on

appeal. And he has failed to brief the issue of prejudice. We thus reject Stricklen's argument that any failure to comply with CrR 2.3 is reversible error.

Finally, Stricklen argues that the sentencing court violated the separation of powers doctrine when it allowed the DOC to set conditions of his community custody. We disagree.

"This court reviews community custody conditions for abuse of discretion and will reverse them only if they are 'manifestly unreasonable.'" State v. Irwin, 191 Wn. App. 644, 652, 364 P.3d 830 (2015) (quoting State v. Sanchez Valencia, 169 Wn.2d 782, 791-92, 239 P.3d 1059 (2010)). Stricklen's judgment and sentence indicated that the CCO may designate a geographic boundary that Stricklen must remain in or stay away from, that the CCO may require Stricklen to participate in crime-related treatment or counseling, and that the CCO may set other conditions.

RCW 9.94A.704(2)(a) authorizes the DOC to "establish and modify additional conditions of community custody based upon the risk to community safety." And in response to similar constitutional challenges, our courts have noted that:

> While it is the function of the judiciary to determine guilt and impose sentences, the execution of the sentence and the application of the various provisions for the mitigation of punishment and the reformation of the offender are administrative in character and are properly exercised by an administrative body, according to the manner prescribed by the Legislature.

State v. McWilliams, 177 Wn. App. 139, 154, 311 P.3d 584, (2013) (quoting State v. Sansone, 127 Wn. App. 630, 642, 111 P.3d 1251 (2005)).

Because the DOC has statutory authority to impose conditions of community custody, we reject Stricklen's argument that the sentencing court violated the separation of powers doctrine by allowing DOC to set additional community custody conditions.

## CONCLUSION

We conclude the trial court correctly denied Stricklen's motion to suppress evidence found in his apartment, it did not err in finding the searching officers complied with CrR 2.3(b), and Stricklen's conditions of community custody are constitutional.

Affirmed.

_Andrus, A.C.J._

WE CONCUR: